
DA 06-0821

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 303

STATE OF MONTANA,

Plaintiff and Appellee,

v.

LIN TORGERSON,

Defendant and Appellant.

APPEAL FROM:  District Court of the Ninth Judicial District,
In and For the County of Toole, Cause No. DC 04-041
Honorable David Rice, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Maxwell G. Battle, Jr.; Battle & Edenfield, P.L.L.C.,
Kalispell, Montana

For Appellee:

Hon. Mike McGrath, Montana Attorney General; Barbara C. Harris,
Assistant Attorney General Helena, Montana

Submitted on Briefs:  December 6, 2007

Decided:  August 26, 2008

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 A jury in the Ninth Judicial District Court, Toole County, found Lin E. Torgerson guilty of the misdemeanor offenses of unlawful possession of a game animal and unlawful possession of bird parts. Torgerson appeals. We affirm.

¶2 We restate the issues as follows:

¶3 1. Did the District Court err in refusing to suppress evidence gathered during the searches of Torgerson's residence and the premises of Torgerson Implement?

¶4 2. Did the District Court err in admitting the testimony of Torgerson's former wife?

¶5 3. Did the District Court erroneously admit hearsay testimony by Game Warden Rod Duty?

¶6 4. Did the District Court err in denying Torgerson's motions for mistrial based on alleged prosecutorial misconduct?

¶7 5. Was the evidence sufficient to convict Torgerson?

BACKGROUND

¶8 In February of 2004, Daisy Doane went to the Conrad, Montana, office of the Montana Department of Fish, Wildlife, and Parks with information about her then-estranged husband Torgerson's unlawful killing of four whitetail deer bucks, in four separate incidents, over a period of several years. Based in large part on the information Doane provided, game wardens and other law enforcement officers obtained warrants to search Torgerson's residence and his family's business, Torgerson Implement. From the collections of antlers and mounts in both locations, they seized two head mounts from the business and a set of

2

velvet antlers and a head mount from the residence. They also seized a golden eagle skull, feathers and numerous photographs of Torgerson posing with dead deer from the residence.

¶9 In October of 2004, the State of Montana charged Torgerson with unlawful possession of bird parts and unlawful possession of wildlife—four whitetail deer bucks it alleged he had taken either outside the legal hunting season or illegally with the use of a spotlight. The State valued three of the bucks at $500 each, pursuant to § 87-1-111, MCA, and the fourth as a trophy animal worth $8,000, pursuant to § 87-1-115, MCA.

¶10 Doane and Torgerson subsequently divorced. At Torgerson's trial in the summer of 2006, Doane testified for the State under a grant of immunity. Doane told the jury she had pled guilty to two misdemeanor counts of possession of unlawfully-killed game animals— the mounts seized from Torgerson's (and her former) home. She told the jury she had hunted with Torgerson many times while they were dating and during their three-year marriage. At trial, she claimed lack of memory as to many details she had provided the game wardens in February of 2004, but counsel refreshed her memory with notes from her meetings with game wardens. Doane testified that she held a spotlight for Torgerson while he shot at a whitetail buck with velvet-covered antlers in a CRP field before the gun hunting season, and then saw the dead animal the next day. She testified that, on another occasion, before the general hunting season during which hunting with a gun is allowed, Torgerson shot a whitetail deer with a gun and then his brother shot the same animal with a bow and arrow. She testified that she held a spotlight while Torgerson shot a whitetail buck with a rifle in Bob Layne's field. She also testified that Torgerson shot a whitetail buck with a gun

3

during bow hunting season on "Parcell's ranch" and brought it home the next day.

¶11    The three mounts and the set of velvet antlers seized from Torgerson's home and family business were admitted into evidence. William J. Reneau, director of big game records for the Boone and Crocket Club, identified the mounts and antlers as those of the animals shown in several photographs seized from Torgerson's residence and associated with Doane's testimony about the illegally-taken whitetail bucks. Wildlife biologist Gary Olson explained the yearly cycles of a deer buck's antlers and hair, testifying that deer usually lose their velvet beginning in August. Olson noted the antlers in evidence were still in velvet and, on one mount, the velvet appeared to have been scraped off after the animal died. Olson also noted that the hair on the mounts appeared to be in a transition process between the summer coats and the winter coats, which he testified typically would happen in mid-August to mid-September.

¶12    Game Warden Rod Duty testified, among other things, that the five-week general hunting season in Montana begins five weeks before Thanksgiving. He also testified that, prior to the searches, Doane told the wardens where they would find unused hunting tags of Torgerson's and that Torgerson would often save them in case he wanted to use them later. During the search of Torgerson's home, the searchers found hunting tags for the years 1998, 1999 and 2000.

¶13    Game Warden Bryan Golie testified that, during the search of Torgerson's home, Torgerson said, "[y]ou're going to find this anyway. I might as well get it." Torgerson then walked over to a back room and picked up a backpack with feathers sticking out of it. He

told Golie he had found the feathers, as well as a bird skull which was also in the backpack, while he was antler hunting. According to wildlife biologist Olson, the feathers and skull were golden eagle parts, possession of which is prohibited by law.

¶14    Torgerson testified on his own behalf. He admitted shooting two of the deer, but denied doing so illegally. He specifically denied shooting any of the deer with the aid of a spotlight. He told the jury he found the deer in the Layne field already dead, apparently from natural causes; and that he did not shoot the deer Doane claimed he shot with a gun and his brother later shot with a bow and arrow. Torgerson presented evidence that the yearly cycles of deer antlers and coats can vary, and pointed out gaps in Doane's observations. He also suggested Doane or the game wardens may have planted the eagle parts in his home.

¶15    The District Court gave the jury two special verdict forms. On the first, the jury was asked whether Torgerson was guilty of possession of unlawfully-killed wildlife and, if so, the total value of the animals he illegally possessed. On the other verdict form, the jury was asked to find whether Torgerson was guilty of unlawful possession of bird parts. The jury found Torgerson guilty of possession of unlawfully-killed wildlife and set the total value at $500; it also found him guilty of unlawful possession of bird parts. The District Court sentenced Torgerson to six months in the county jail on each of the two offenses, all of which time it suspended.

## ISSUE 1

¶16    **Did the District Court err in refusing to suppress evidence gathered during the searches of Torgerson's residence and the premises of Torgerson Implement?**

¶17    Torgerson timely moved the District Court to suppress evidence gathered during the

5

searches of his residence and family business, arguing the search warrants were based on "illegal private searches" and information obtained from a disgruntled spouse, Doane, whose information was privileged. The District Court denied the motion.

¶18 One year later—well after the deadline set in the omnibus order for pretrial motions—Torgerson filed a "supplemental motion to suppress" the same evidence. In that motion, Torgerson raised new arguments for suppressing the evidence, including the argument he now raises on appeal: that the warrants to search his residence and his family's business were facially defective and unlawfully executed as a "fishing expedition" because they did not particularly describe the things to be seized. The District Court denied the "supplemental motion to suppress," citing the law of the case and Torgerson's failure to cite any new evidence previously unavailable which would justify reconsideration of the matter.

¶19 In his reply brief, Torgerson claims he did not have all the information to support his motion to suppress until he was represented by his present counsel, who filed the "supplemental motion to suppress" in the District Court. Torgerson does not claim the information was unavailable until that time, however—only that his original counsel did not obtain it.

¶20 Absent plain error, this Court will not consider an issue not timely raised in the district court. *See State v. Minez,* 2004 MT 115, ¶ 30, 321 Mont. 148, ¶ 30, 89 P.3d 966, ¶ 30 (citation omitted). Torgerson did not timely raise this issue in the District Court, nor has he alleged or established plain error. Therefore, we will not consider this issue further.

¶21 We hold Torgerson has failed to establish error in the District Court's refusal to

suppress evidence gathered during the searches of his residence and the premises of Torgerson Implement.

ISSUE 2

**¶22 Did the District Court err in admitting the testimony of Doane, Torgerson's former wife?**

¶23 Torgerson asserts admission of Doane's testimony was improper for several reasons. We address each of his arguments in turn.

¶24 Prior to trial, Torgerson moved the District Court to exclude Doane's testimony because she was an accomplice who was legally accountable for two of the counts of unlawful possession of wildlife for which he was being tried—the shootings at which she testified she held the spotlight for him. Immediately before Doane testified, the court denied Torgerson's motion to exclude her testimony and ruled the State could present her testimony before it presented evidence corroborating it, as is required under § 46-16-213, MCA. The court also stated that, after the State had presented its case, it would entertain Torgerson's motion for dismissal for insufficient corroborating evidence. At the close of the State's case, the District Court denied that motion.

¶25 On appeal, Torgerson claims the court erred in denying his motion for dismissal due to insufficient corroborating evidence. We review questions regarding the sufficiency of corroborating evidence in the light most favorable to the prosecution. *State v. Berger*, 1998 MT 170, ¶ 28, 290 Mont. 78, ¶ 28, 964 P.2d 725, ¶ 28 (citation omitted).

¶26 Accomplice testimony cannot form the basis for a criminal conviction unless it is properly corroborated. Section 46-16-213, MCA. Corroborating evidence must be

7

independent and must tend to connect the defendant with commission of the offense. Conversely, corroborating evidence need not be sufficient to support a conviction or even to make out a prima facie case against the defendant. *Berger*, ¶ 28 (citations omitted). Nor is corroborating evidence insufficient merely because it is circumstantial, disputed or possibly consistent with innocent conduct. *State v. Marler*, 2008 MT 13, ¶ 23, 341 Mont. 120, ¶ 23, 176 P.3d 1010, ¶ 23.

¶27 Doane's testimony that Torgerson shot two deer with the aid of a spotlight was supported by the spotlights found in Torgerson's home. Her testimony about the shootings of the various deer was supported by the envelopes of photographs seized from his home, marked 1996, 1998, 1999 and 2000, showing him posing with the dead animals. It was further supported by the unused deer hunting permit tags for the years 1998, 1999 and 2000 seized from Torgerson's home. In addition, the game wardens' testimony regarding the velvet antlers and the summer coats supported Doane's testimony that the animals were taken before the five-week general hunting season began. The State's corroborating evidence was independent of Doane's testimony and tended to connect Torgerson to the charged offenses. We conclude that, viewed in the light most favorable to the prosecution, the evidence sufficiently corroborated Doane's testimony.

¶28 Torgerson also argues the District Court erred in allowing Doane to testify about communications between them while they were married in violation of § 26-1-802, MCA, which prohibits such testimony without the nontestifying spouse's permission. Before trial, Torgerson moved to exclude testimony by Doane regarding his spousal communications

8

with her. In discussing Torgerson's motion with counsel immediately before trial, the District Court made no formal ruling on the motion, but advised counsel "[i]f [spousal immunity] does come up, raise your objections, if you want a continuing objection to some of those things."

¶29 On appeal, Torgerson advances only one instance of Doane's testimony. Counsel for the State had asked Doane if she had taken anything with her when she went to meet with the game wardens early in their investigation of Torgerson. Doane responded that she had taken a piece of paper on which she had jotted down some notes to help her remember dates and other details. Counsel then asked if Doane remembered what she had written across the top of the paper, and Doane replied she did not. Counsel produced the notes and asked Doane to refresh her recollection by reading them. Counsel then had Doane read aloud what she had written across the top: "If you go to the game wardens, I will say you're just as guilty as I am." Doane testified Torgerson had made that statement to her when they were angry with each other and trying to work out custody terms for their daughter as part of the dissolution of their marriage.

¶30 Torgerson contends on appeal that the District Court violated § 26-1-802, MCA, in admitting the above testimony by Doane. He claims the court had granted him a continuing objection on grounds of spousal immunity.

¶31 As indicated above, the record reflects that the court told defense counsel prior to trial that "[i]f [spousal immunity] does come up, raise your objections, if you want a continuing objection to some of those things." Torgerson did not follow the District Court's directive;

9

nor did he object to the testimony he now argues was improperly admitted. As a result, we conclude he may not now argue trial court error in this regard. *See* § 46-20-104(2), MCA; *State v. Clausell*, 2001 MT 62, ¶ 25, 305 Mont. 1, ¶ 25, 22 P.3d 1111, ¶ 25 (citation omitted).

¶32 Finally, Torgerson argues Doane's statement that he told her, "If you go to the game wardens, I will say you're just as guilty as I am," was inadmissible on hearsay grounds. Torgerson is correct that hearsay generally is not admissible into evidence. *See* M. R. Evid. 802. However, because he did not object on this basis, we conclude he waived the ability to assert error on appeal.

¶33 We hold Torgerson has not established error by the District Court in admitting Doane's testimony.

ISSUE 3

¶34 **Did the District Court erroneously admit hearsay testimony by Game Warden Rod Duty?**

¶35 Duty testified concerning meetings he had with Doane in February and March of 2004. Torgerson objected, on hearsay grounds, to Duty's testimony about several things Doane told him at those meetings. Based on Doane's uncertainty in her own testimony and Torgerson's challenges to her recollections on cross-examination, however, the District Court ruled—in essence—that Duty's testimony was allowable as prior inconsistent statements of a witness. *See* M. R. Evid. 801(d)(1). On appeal, Torgerson argues Duty's testimony regarding statements Doane made at those meetings was inadmissible hearsay pursuant to M. R. Evid. 802.

¶36 We observe that Torgerson does not advance legal argument or authorities in support

of his assertion that the District Court abused its discretion in admitting Doane's testimony. M. R. App. P. 12(1)f places that burden on the appellant. We are not obligated to conduct legal research or develop legal analysis that might support an appellant's position. *State v. Buck*, 2006 MT 81, ¶¶ 99-100, 331 Mont. 517, ¶¶ 99-100, 134 P.3d 53, ¶¶ 99-100. The appellant bears the burden of establishing trial court error. *See e.g. State v. Johnson*, 2008 MT 227, ¶ 17, 344 Mont. 313, ¶ 17, 187 P.3d 662, ¶ 17(citation omitted); *Buck*, ¶ 31 (citation omitted).

¶37 We conclude Torgerson has failed to establish that the District Court erroneously admitted hearsay testimony by Duty.

## ISSUE 4

¶38 **Did the District Court err in denying Torgerson's motions for mistrial based on alleged prosecutorial misconduct?**

¶39 During her questioning of Doane at trial, the prosecutor commented that Doane's lawyer, who was present in the courtroom, was from Kalispell, Montana, the "same place defense counsel practices." After Doane's testimony had been completed, Torgerson moved for a mistrial based on this comment. The District Court denied the motion.

¶40 In addition, the prosecutor noted during her rebuttal closing argument that Doane had testified with immunity. Torgerson made an unspecified objection and requested a sidebar. The District Court denied Torgerson's request for a sidebar and reminded the jury that they would decide what the facts were. After closing arguments were completed, Torgerson's counsel moved for a mistrial based on the reference to Doane's immunity. The District Court denied the motion.

¶41 On appeal, Torgerson again asserts his entitlement to a new trial on the grounds raised in the District Court. He also challenges several additional remarks by the prosecutor during closing argument. Because Torgerson objected to only one remark during the prosecutor's closing argument, he has waived other objections in that regard. *See State v. Dunfee*, 2005 MT 147, ¶¶ 41-44, 327 Mont. 335, ¶¶ 41-44, 114 P.3d 217, ¶¶ 41-44 (citations omitted).

¶42 We review the denial of motions for mistrial by determining, first, whether the prosecutor made improper comments. If so, we determine whether the comments prejudiced the defendant's right to a fair and impartial trial. *State v. Gladue*, 1999 MT 1, ¶ 12, 293 Mont. 1, ¶ 12, 972 P.2d 827, ¶ 12.

¶43 Torgerson does not enlighten us as to why he believes the prosecutor's comment that Doane's counsel, like defense counsel, was from Kalispell represents grounds for a mistrial. Nor does he provide any legal support for his claim that the remark during rebuttal closing argument constituted prosecutorial misconduct. He makes only general reference to cases regarding prosecutorial misconduct as grounds for mistrial. *See Gladue* (improper comments by a prosecutor in closing argument are viewed with disfavor); *State v. Statczar*, 228 Mont. 446, 457, 743 P.2d 606, 613 (1987) (statements by a prosecutor reflecting the prosecutor's personal views are improper); *State v. Bain*, 176 Mont. 23, 575 P.2d 919 (1978) (misconduct by a prosecutor can form the basis for a new trial).

¶44 This Court is not obligated to conduct legal research on an appellant's behalf or to develop legal analysis to support the appellant's position, and we will not address an argument which is unsupported by analysis or citation to legal authority as required by M. R.

12

App. P. 12(1)f. *Buck*, ¶¶ 99, 100.

¶45 We conclude Torgerson has not established that the District Court erred in denying a mistrial based on the prosecutor's remarks.

ISSUE 5

¶46 **Was the evidence sufficient to convict Torgerson?**

¶47 Torgerson moved for dismissal for insufficiency of the evidence following the State's case, and the District Court denied that motion. On appeal, Torgerson asserts error on the basis that the evidence against him was insufficient to support his convictions for the misdemeanor offenses of unlawful possession of a game animal and unlawful possession of bird parts.

¶48 Dismissal for insufficiency of the evidence is appropriate only if, viewing the evidence in a light most favorable to the prosecution, there is no evidence upon which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Bomar*, 2008 MT 91, ¶ 13, 342 Mont. 281, ¶ 13, 182 P.3d 47, ¶ 13 (citation omitted). It is within the province of the finder of fact to determine the credibility of witnesses and, in the event of conflicting evidence on factual issues, to determine the weight to be given that evidence. *See State v. Sattler*, 1998 MT 57, ¶ 55, 288 Mont. 79, ¶ 55, 956 P.2d 54, ¶ 55 (citation omitted). We review de novo the denial of a motion for dismissal for insufficiency of the evidence, to determine whether there is sufficient evidence to convict. *State v. Swann*, 2007 MT 126, ¶ 19, 337 Mont. 326, ¶ 19, 160 P.3d 511, ¶ 19.

¶49 Here, the court instructed the jury that, to find Torgerson guilty of an act or acts, all of

13

its members must agree that Torgerson committed the same act or acts. The court instructed the jury that, to convict Torgerson of unlawful possession of wildlife, the State must prove that Torgerson possessed, had or kept in storage a game animal, the game animal was unlawfully killed, and Torgerson acted purposely or knowingly. The court further instructed the jury that the statutory value of a nontrophy deer was $500 and the statutory value of a trophy animal was $8,000.

¶50    As set forth above, the jury found Torgerson guilty of unlawful possession of wildlife, which it valued at $500. Hence, pursuant to the instructions given, the jury clearly found Torgerson guilty of unlawful possession of one nontrophy deer. The special verdict form did not require the jury to specify the animal or animals as to which it might render a guilty verdict, however, and Torgerson did not object to the special verdict form on those grounds. Because we cannot determine which animal the jury found Torgerson unlawfully possessed, we review the evidence as to each of the four deer to determine whether sufficient evidence existed to support a guilty verdict on the charged offense of unlawful possession of each of those animals.

¶51    Doane testified she held a spotlight to assist Torgerson while he used a gun to shoot at the deer with the velvet antlers at night and that, while she did not actually see the dead animal that night, she saw it—dead—the next day. She identified that animal as the one shown in photographs admitted into evidence in an envelope marked, in what she identified as Torgerson's handwriting, with "96 Lin Velvet WT." Game Warden Duty testified that he saw spotlights in Torgerson's home during the search. Finally, the Boone and Crockett

14

expert, Reneau, testified that one of the mounts in evidence was the same animal shown in the photographs in the envelope marked "96 Lin Velvet WT."

¶52 Doane testified that, on another occasion, she was driving around with Torgerson when he shot at a whitetail deer with a gun before the gun hunting season had opened. The deer stumbled, but then Doane saw it run "all the way to the river." Doane testified that Torgerson and his brothers went out looking for the animal the following day, and Torgerson's brother shot it with a bow. Doane further identified the handwritten words "'98 Velvet WT Chase" as Torgerson's writing on an envelope of photographs admitted into evidence. Reneau testified the photographs in the envelope were of the animal preserved in one of the mounts introduced into evidence. In addition, Doane testified the animal's head had been preserved on a pedestal mount which was kept at Torgerson's house—not at his brother's house—and Reneau identified that mount as the animal shown in the photographs.

¶53 As to the third charge of unlawful possession of wildlife, Doane testified she held a spotlight while Torgerson shot a whitetail buck with a rifle in Bob Layne's field. An envelope of photographs seized from Torgerson's home and introduced into evidence, marked in what Doane identified as Torgerson's handwriting with "'99 Lin WT," show him beside the bloated dead deer in daylight. Reneau testified those photographs showed the animal in a mount admitted into evidence. The words "Lin Torgerson, 1999" were written on the back of the mount.

¶54 Finally, Doane testified that she and Torgerson observed a whitetail buck during bow hunting season on "Parcell's ranch," and Torgerson shot it with a gun and brought it home

the next day. She identified that buck in photographs seized from Torgerson's home showing Torgerson posing with the dead animal. Reneau testified the photographs were of the animal preserved in one of the mounts in evidence.

¶55 We conclude the evidence would allow a rational trier of fact to find Torgerson guilty of unlawful possession of wildlife, beyond a reasonable doubt, of each of the four deer.

¶56 As to Torgerson's conviction of the offense of possession of wild bird parts, Torgerson contends the State did not offer any evidence that the parts he possessed were from wild birds, as opposed to from a falconer's bird. Indeed, he asserts the State did not prove that the feathers and skull were from an eagle, because no DNA test was obtained. Further, Torgerson points out that the State put on no proof that he did not have a "certificate, falconer's license, or permit" allowing him to possess the parts, pursuant to § 87-5-201, MCA.

¶57 These arguments are not dispositive of the issue of whether the evidence was sufficient to support Torgerson's conviction on this count. The court instructed the jury—without objection—that a person commits the offense of unlawful possession of bird parts if he purposely or knowingly possesses any part of the plumage, skin or body of a wild bird other than a game bird. As set forth above, the State presented testimony by Game Warden Golie that, during the search of Torgerson's home, Torgerson pointed out the backpack containing the feathers and skull. The State also presented testimony by wildlife biologist Olson identifying the feathers and skull found in Torgerson's home as those of an eagle based on the shape and size of the beak and on feather length, color and shape.

16

¶58    We hold the evidence was sufficient to support the convictions.

¶59    Torgerson having established no grounds for reversal of his convictions, we affirm the judgment of the District Court.

/S/ KARLA M. GRAY

We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS