No. 98-393

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 220

296 Mont. 19

986 P.2d 424

---

STATE OF MONTANA,

Plaintiff and Respondent,

v.

WILLIAM LESTER RARDON,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

David M. Ortley, Attorney at Law; Kalispell, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; JenniferAnders,

Assistant Attorney General; Helena, Montana

Thomas J. Esch, Flathead County Attorney; Ed Corrigan,

Deputy County Attorney; Kalispell, Montana

Submitted on Briefs: April 1, 1999

Decided: September 22, 1999

Filed:

Clerk

Justice Jim Regnier delivered the opinion of the Court.

1. ¶William Lester Rardon appeals from the Judgment and Sentence entered by the Eleventh Judicial District Court, Flathead County, sentencing him to 75 years at the Montana State Prison with 15 years suspended. In addition, the District Court declared Rardon ineligible for parole for 35 years and until completion of all phases of the Sex Offender Treatment Program.

2. ¶The dispositive issues on appeal are whether the State breached the terms of the plea agreement and, if so, whether Rardon is entitled to be resentenced by a different judge. We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

1. ¶On March 18, 1997, the State of Montana charged Rardon by Information with committing one count of sexual intercourse without consent in violation of § 45-5-503(1), MCA, and two counts of sexual assault in violation of § 45-5-502, MCA. These charges stemmed from allegations of Rardon's sexual molestation of his two minor daughters. At his arraignment, Rardon pled not guilty to the charges and a trial date was set.

2. ¶On May 19, 1997, Rardon signed a written acknowledgment of his rights and entered into a written plea agreement with the State. Rardon agreed to plead guilty to one count of sexual assault in exchange for dismissal of the charge of sexual intercourse without consent and the other charge of sexual assault. In addition, the State agreed to recommend "a sentence in conformity with whatever recommendation may result from the Sexual Offender Amenability Evaluation and Pre-Sentence Investigation to be performed in this case prior to sentencing."

3. ¶On June 12, 1997, Rardon appeared before the District Court for the purpose of changing his plea to guilty with respect to one count of sexual assault. After the District Court advised Rardon of his rights and the consequences of pleading guilty, it accepted Rardon's guilty plea and ordered a Presentence Investigation Report and a Sex Offender Evaluation. Upon the State's motion, the District Court dismissed the remaining counts of the Information and set a date for sentencing.

4. ¶The Sexual Offender Treatment Amenability Evaluation was prepared on August

4, 1997, by the director of the Northwest Family Recovery Program and submitted to the District Court. This evaluation recommended, *inter alia*, that Rardon be accepted, on a probationary status, into an outpatient treatment program, without any term of years, to be completed in Great Falls according to the treatment standards of the Montana Sex Offender Treatment Association.

5. ¶The probation and parole officer, who prepared the presentence investigation report dated October 30, 1997, recommended that Rardon receive a 40-year Montana State Prison sentence with 20 years suspended. The officer further recommended that Rardon not be eligible for parole until Rardon completes all available phases of the Sex Offender Treatment Program at the Montana State Prison.

6. ¶At the December 4, 1997, sentencing hearing, the State recommended that the District Court impose a sentence of 70 years with no eligibility for parole until Rardon completes the Sex Offender Treatment Program, but for at least 30 years. In his opening remarks, Rardon's counsel referred the District Court to the plea agreement and objected to the State's recommendation on the basis that it violated the plea agreement. The State responded to the objection by stating that since the Presentence Investigation Report recommended a lengthy prison term and the Sex Offender Amenability Evaluation recommended probation and an outpatient treatment program, any recommendation was at its discretion. The State went on to claim that it did not feel the lengthy prison term recommended in the Presentence Investigation Report was sufficient and that the plea agreement did not bind the State to a specific term of years.

7. ¶After considering the evidence presented at the sentencing hearing, the recommendations of counsel, and the information set forth in the Presentence Investigation Report and the Sex Offender Treatment Amenability Evaluation, the District Court rendered its judgment and sentence. The District Court also pointed out that Rardon had acknowledged that the court was not bound by the plea agreement and that the court had noted its contemplated sentence prior to the State's recommendation. The District Court ultimately sentenced Rardon to the Montana State Prison for 75 years with 15 years suspended. The District Court also imposed, *inter alia*, a restriction of no eligibility for parole for 35 years and until successful completion of all phases of the sexual offender treatment program at the Montana State Prison. Rardon appeals.

## DISCUSSION

1. ¶Did the State breach the terms of the written plea agreement entered into with

Rardon when it recommended a sentence not in conformity with the Sexual Offender Treatment Amenability Evaluation or the Presentence Investigation Report and, if so, is Rardon entitled to be resentenced by a different judge?

2. ¶ The standard of review of discretionary trial court rulings in criminal cases is whether the trial court abused its discretion. *State v. Sullivan* (1994), 266 Mont. 313, 324, 880 P.2d 829, 836.

3. ¶Rardon contends that an essential and material inducement to his agreement to waive his various statutory and constitutional rights was the State's agreement to recommend a sentence in conformity with whatever recommendation may result from the Sexual Offender Amenability Evaluation and Presentence Investigation. Rardon argues that the State's non-conforming recommendation was in violation of its promise and obligation under the terms of the plea agreement, entitling him to specific performance of the plea agreement and re-sentencing by a different judge or in the alternative, withdrawal of his guilty plea.

4. ¶There are two remedies available to a defendant for the government's breach of a plea agreement in connection with sentencing: "the withdrawal of a guilty plea or specific performance of the plea agreement." *State v. Persak* (1993), 256 Mont. 404, 407, 847 P.2d 280, 281 (citing *Santobello v. New York* (1971), 404 U.S. 257, 263, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427, 433). "The law is clear that the choice of remedy for a breach of a plea agreement is within the sound discretion of the trial court." *Persak*, 256 Mont. at 407, 847 P.2d at 281-82 (citations omitted).

Specific performance entitles a defendant to a resentencing by a different judge in accordance with the plea agreement. At the new sentencing hearing, the prosecution must perform the promise it made in the plea agreement. This remedy of specific performance is an alternative remedy to allowing defendant to withdraw his guilty plea.

*Persak*, 256 Mont. at 407, 847 P.2d at 281-82 (citations omitted).

1. ¶We have recognized that "a plea agreement presupposes fundamental fairness in the securing of the agreement between the defendant and the prosecutor . . . ." *State v. Schoonover*, 1999 MT 7, ¶ 12, 973 P.2d 230, ¶ 12, 56 St. Rep. 30, ¶ 12. "[C]onsequently, we have held that prosecutors--as well as--defendants are bound by the plea agreements they make." *Schoonover*, ¶ 12 (citing *State v. Bowley* (1997), 282 Mont. 298, 310, 938 P.2d 592, 599).

This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

Prosecutors who engage in plea bargaining must meet strict and meticulous standards of both promise and performance as a plea of guilty resting in any significant degree on an unfulfilled plea bargain is involuntary and subject to vacation. Prosecutorial violations, even if made inadvertently or in good faith to obtain a just and mutually desired end, are unacceptable.

*Bowley, 282 Mont. at 310-11, 938 P.2d at 599 (citations omitted).*

1. ¶Rardon argues, the State concedes and we agree that the prosecutor did not strictly abide by the plea agreement. The plea agreement obligated the State to "recommend to the Court a sentence in conformity with whatever recommendation may result from the Sexual Offender Amenability Evaluation and Pre-Sentence Investigation . . . ."

2. ¶The Sexual Offender Amenability Evaluation recommended that Rardon be placed on probation and accepted into an outpatient treatment program in Great Falls. The Pre-Sentence Investigation Report recommended that Rardon be incarcerated in the Montana State Prison for a term of 40 years with 20 years suspended and no eligibility for parole until successful completion of all available phases of the Sex Offender Treatment Program at the prison. The State recommended incarceration at the Montana State Prison for 70 years and ineligibility for parole until completion of the Sex Offender Treatment Program at the prison, but not before a term of at least 30 years.

3. ¶As set forth above, the record is clear that despite its contractual promise to make a sentencing recommendation in conformity "with whatever recommendation may result from the Sexual Offender Amenability Evaluation and Pre-Sentence Investigation" the State recommended a sentence far different from that contained in either the Sexual Offender Amenability Evaluation or the Presentence Investigation

Report. We conclude that the State breached the plea agreement entered into with Rardon. Therefore, we hold that the District Court abused its discretion when it failed to require the State to abide by the terms of the plea agreement.

4. ¶Reversed and remanded. In accordance with our discussion in *State v. Persak*, it is within the sound discretion of the trial judge to determine the appropriate remedy for the prosecution's breach of a plea agreement. The trial judge may either allow the defendant to withdraw his guilty plea or, in the alternative, require specific performance of the plea agreement and order that a new sentencing hearing be conducted before a different judge.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER