

DA 07-0400

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 134

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

RYAN M. HILL,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DC 06-084
Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender; Lisa S. Korchinski (argued),
          Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; J. Stuart Segrest (argued),
          Assistant Attorney General, Helena, Montana

          Cyndee L. Peterson, Hill County Attorney; Gina Bishop, Deputy County
          Attorney, Havre, Montana

          Argued and Submitted: September 17, 2008
                    Decided: April 15, 2009

Filed:

        _____
                       Clerk

Justice John Warner delivered the Opinion of the Court.

¶1    Pursuant to a plea agreement, Ryan Michael Hill pled guilty to attempted sexual intercourse without consent. In exchange for his guilty plea, the State dismissed one count of sexual intercourse without consent and a separate charge of sexual abuse of children. The Twelfth Judicial District Court, Hill County, sentenced Hill to 60 years at Montana State Prison, with all but 15 years suspended. Hill appeals.

¶2    Hill raises the following issues on appeal:

¶3    Issue 1: Must Hill's conviction be reversed because the State violated the plea agreement by asking the District Court to sentence him more severely based on a dismissed charge?

¶4    Issue 2: Did the District Court violate Hill's due process and Fifth Amendment rights by considering acts which Hill reported while he was in a sexual offender treatment program?

¶5    Issue 3: Did the District Court err by designating Hill a Level 3 sex offender?

## BACKGROUND

¶6    In November 2000, the State filed a petition to declare Hill a delinquent youth in the Twelfth Judicial District Youth Court, alleging he committed the offense of sexual assault. The petition alleged that in 1999, when Hill was a juvenile, he forced a 14-year-old boy and his 10-year-old sister to simulate sexual intercourse while he videotaped them and the reports state he fondled the girl and forced the boy to perform oral sex on him. The record and reports reflect Hill admitted these offenses, which would have been crimes if Hill was an adult. Hill and the State entered into a consent decree, which provided if Hill successfully

2

completed treatment at Yellowstone Treatment Center (YTC), the State would dismiss the petition. The consent decree also provided that if Hill violated any of its terms, he could, at the discretion of the juvenile probation officer, be placed in detention for up to ten days. The Youth Court accepted the consent decree.

¶7 The record contains reports indicating that while at YTC, Hill sexually offended against three younger children when he exposed himself, forced oral sex on a boy, and fondled a girl. YTC terminated Hill and he was subsequently admitted to Brown School, Thresholds for Change (Brown School)--another youth sexual offender treatment program. The court granted the State's petition to extend Hill's probation an extra year and again required Hill to successfully complete sex offender treatment at Brown School.

¶8 Brown School discharged Hill. Hill's case manager strongly recommended he not be released into the community and not be placed in a less restrictive program than Brown School because she considered him an extremely high risk to reoffend. She recommended he be transferred to the Juvenile Sex Offender Treatment Program at the Pine Hills Juvenile Detention Facility in Miles City. However, Hill was returned home.

¶9 Hill's family placed him at a private sexual offender treatment center, but removed him because they did not like how he was being treated.

¶10 In June 2006, in Count I of the information filed in this case, the State charged Hill with attempted sexual intercourse without consent, alleging he tried to have intercourse with his 3 ½-year-old niece, N.T. About a month later, the State amended its information to add Count II, sexual intercourse without consent, alleging that Hill forced N.T. to perform oral

3

sex on him. At about the same time, in a separate case, the State charged Hill with sexual abuse of children, alleging he solicited sex over the internet from a 14-year-old girl, K.S.

¶11    In October 2006, Hill and the State entered into a plea agreement. Hill agreed to plead guilty to Count I. The State agreed to dismiss Count II of the information as well as the information alleging he was guilty of the offense of sexual abuse of children. As a part of the plea agreement, Hill agreed to complete a psychosexual evaluation. The plea agreement also provided that a pre-sentence investigation would be conducted by a probation officer and a pre-sentence investigation report (PSI) would be prepared and filed. Hill acknowledged that the sentencing judge would not be bound by the recommendations of either party, or of the probation officer, and that he could be sentenced up to the maximum penalty provided by law.

¶12    Unknown to the State, Hill hired Dr. Donna Zook to conduct a sex offender evaluation weeks before he signed the plea agreement. Dr. Zook performed the typical tests associated with a psychosexual evaluation. However, she was not provided with information concerning Hill's prior offenses or of his treatment at YTC and Brown School. Dr. Zook prepared a report in which she concluded Hill needed intense, lifetime supervision and recommended he be designated a Level 2 sex offender; a moderate risk to reoffend. Later, at the sentencing hearing, Dr. Zook acknowledged she lacked complete information when preparing her report, but she did not change her recommendation that Hill be designated a Level 2 offender.

¶13    In January 2002, years before Hill's offense against N.T. and after he failed the programs at YTC and Brown School, Dr. Marla North conducted a psychosexual evaluation

4

of Hill. At the sentencing hearing, Dr. North testified and updated her knowledge. As a part of her 2002 evaluation, Dr. North reviewed records from YTC and Brown School, stating Hill reported he had sexual contact with other children while in treatment. In answer to questions concerning his sexual history, Hill told Dr. North he had sexual contact with 13 different children, and he entered the details of such contacts in a log he completed at Brown School. Hill told Dr. North he had sexual contact with a 5-year-old boy when he was 13, had oral and anal sex with a 7- or 8-year-old boy when he was 12, had sexual contact with at least five boys younger than himself, and had sexual contact with a 14-year-old girl when he was six or seven, which was his idea.

¶14 A probation officer conducted a pre-sentence investigation and filed a PSI report with the District Court. A copy was provided to both the prosecutor and Hill. As is required by § 46-18-112(1)(a), (b), (e), MCA, the report included information about Hill's prior offenses and prior supervision. The PSI mentioned the other offenses noted in Dr. North's evaluation. Dr. North's and Dr. Zook's written reports were attached. The PSI also included information the probation officer discovered regarding another incident where Hill "cornered" his 16-year-old cousin and tried to have sexual intercourse but she locked herself in a bathroom until Hill left.

¶15 Also attached to the PSI were police reports and victim impact statements regarding the dismissed information charging sexual abuse of K.S. The PSI recommended Hill be sentenced to 60 years in Montana State Prison with all but 20 years suspended, and that he be designated a Level 3 sex offender.

5

¶16    Prior to the sentencing hearing, the State filed a sentencing memorandum in which it asked the District Court to consider not only the charge to which Hill pled guilty, but to consider his entire pattern of behavior, which included information from the dismissed charge.

¶17    At the sentencing hearing, Hill objected to the District Court considering the information from the dismissed sexual abuse of children charge and the sexual acts he admitted to while at Brown School. The details of the objections are discussed below. The District Court sentenced Hill to 60 years with all but 15 years suspended. The District Court designated Hill a Level 3 sex offender and a sexually violent predator.

¶18    Hill does not dispute he needs to be supervised for the remainder of his life. Hill appeals the District Court's designation of a Level 3 offender and in his brief on appeal asks that the District Court's "decision overruling Hill's objection[s]" be reversed. In response to a question from the Court at oral argument asking what remedy Hill sought, his counsel responded that she sought remand so Hill could decide whether to move to withdraw his guilty plea or to move for specific performance of the plea agreement.

## STANDARDS OF REVIEW

¶19    We review a criminal sentence for legality. *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, 983 P.2d 937.

¶20    The rules of evidence do not apply to sentencing hearings. *State v. Walker*, 2007 MT 205, ¶ 21, 338 Mont. 529, 167 P.3d 879. Nevertheless, a defendant may not be sentenced based upon misinformation. *Bauer v. State*, 1999 MT 185, ¶ 21, 295 Mont. 306, 983 P.2d 955. When the issue on appeal is whether the district court violated the defendant's

constitutional rights at sentencing, the question is a matter of law which is reviewed de novo. *State v. Legg*, 2004 MT 26, ¶ 24, 319 Mont. 362, 84 P.3d 648.

¶21 Whether or not a defendant's privilege against self-incrimination is triggered is a conclusion of law. Our standard of review of a district court's conclusions of law is plenary. We determine whether the district court's conclusions are correct. *State v. Fuller*, 276 Mont. 155, 159, 915 P.2d 809, 811 (1996).

¶22 This Court has not previously discussed the standard of review of a district court's designation of a sex offender level pursuant to § 46-23-509(3), MCA. As a district court must exercise considerable discretion in designating a sex offender level, we will review a sex offender level designation for an abuse of discretion.[1]

**DISCUSSION**

¶23 *Issue 1: Must Hill's conviction be reversed because the State violated the plea agreement by asking the District Court to sentence him more severely based on a dismissed charge?*

¶24 The PSI was filed with the District Court and served on the parties several days before Hill's sentencing hearing. This report contained a summary of Hill's prior offenses, and a summary of the evaluations of Dr. North and Dr. Zook. It also included the police reports and statements from the alleged victim of the dismissed information charging sexual abuse of children, K.S., and her mother.

---

[1] Discretionary sentencing decisions are generally reviewed by the sentence review board. Section 46-18-904, MCA. However, in *State v. Mount*, 2003 MT 275, ¶ 45, 317 Mont. 481, 78 P.3d 829, we determined the Sexual or Violent Offender Registration Act is nonpunitive. Thus, a sexual offender level designation is not a sentencing matter within the purview of the sentence review board.

7

¶25 The day before the sentencing hearing, the prosecutor filed a sentencing memorandum, reminding the District Court that Hill self-disclosed numerous sexual contacts with children, that he failed to complete treatment programs, and that treatment providers assessed Hill as being a serious risk to reoffend. The sentencing memorandum went on to state:

> Punishment of Defendant must be commensurate with the nature and degree of harm caused by his offense. Defendant is being sentenced here for only the offense against N.T. However, to forget his other victims would be inappropriate. In particular, K.S. must not be forgotten. K.S. is the victim in the companion case, DC-06-100. This charge is being dismissed as part of the plea bargain between Defendant and the State. This offense is not being dismissed for lack of evidence nor because of victim cooperation. K.S. is willing to participate in the prosecution of the case against Defendant and she has provided a statement to the Court about how Defendant's offense against her has impacted her life. (See attached letter to PSI.) The Court must only sentence Defendant for the Attempted Sexual Intercourse Without Consent for which he has plead guilty, but it is also necessary for the Court to address Defendant's pattern of behavior in offending against other victims not involved in this offense.

¶26 At the sentencing hearing, Hill objected to the inclusion of the police reports and victim impact statements from the dismissed sexual abuse of children case in the PSI. Hill also objected to the State mentioning the dismissed charge in its sentencing memorandum. Hill's counsel argued that by including information about the dismissed case, the State breached the plea bargain agreement. The judge asked counsel whether the objectionable materials would fall under a sentencing court's broad mandate to consider information relating to an appropriate sentence. The judge also inquired if counsel had any legal authority to support his position that the information must be excluded. Counsel acknowledged that a sentencing court would ordinarily be on firm ground in considering the

8

disputed information, but argued that in this case, the State entered into a contract with Hill and was bound to studiously comply with that contract. The District Court did not rule on the objection but stated it would "hold that in abeyance." The District Court never ruled on the objection.

¶27 A sentencing court may consider "any matter relevant to the disposition" of an offender. Section 46-18-115(1), MCA. Hill acknowledged that a district court can consider a wide array of information in sentencing. He did not argue that, generally, a sentencing court may not hear and consider information concerning a dismissed charge against a defendant. Hill specifically argued it was a violation of the plea agreement to bring the facts of the dismissed charge to the court's attention through the backdoor, by asking the District Court to consider the dismissed charge in a sentencing memorandum and by including the police reports and victim impact statements from that charge in the PSI.

¶28 Regarding Hill's argument on the inclusion of information from the dismissed case in the PSI, we have clearly stated that a probation or parole officer who prepares a PSI does not function as an agent of the prosecutor. *State v. Bowley*, 282 Mont. 298, 311-12, 938 P.2d 592, 600 (1997); *State v. Yother*, 253 Mont. 128, 136-37, 831 P.2d 1347, 1352 (1992); *State v. Milinovich*, 248 Mont. 373, 376, 812 P.2d 338, 340 (1991), *overruled on other grounds, State v. Deserly*, 2008 MT 242, 344 Mont. 468, 188 P.3d 1057. The State did not breach the plea agreement because the probation officer included the police reports and statements of K.S. and her mother in the PSI.

¶29 Hill again argues on appeal that the State backdoored the plea agreement—and therefore breached it—when it agreed to, and did, dismiss the charge of sexual abuse of

9

children, then encouraged the court not to forget K.S., said K.S. was willing to testify, and characterized her as a victim in its sentencing memorandum.[2] Prosecutors, as well as defendants, are bound by the plea agreements they make. Prosecutors who engage in plea bargaining must meet strict and meticulous standards of both promise and performance. *State v. Rardon*, 1999 MT 220, ¶ 14, 296 Mont. 19, 986 P.2d 424 (*Rardon I*), *overruled on other grounds, State v. Munoz*, 2001 MT 85, 305 Mont. 139, 23 P.3d 922. A prosecutor must give more than lip service to her plea bargain.[3] However, there are no hard and fast criteria defining when a prosecutor has merely paid lip service to a plea agreement as opposed to when she has fairly, but strongly, presented the State's case. "Each case stands or falls on the facts unique to it." *State v. Rardon*, 2002 MT 345, ¶ 21, 313 Mont. 321, 61 P.3d 132 (*Rardon II*).

¶30     In the plea agreement, the State did not agree to refrain from reminding the sentencing court about Hill's charge against K.S. Nor does any term of the plea bargain agreement prevent the State from presenting the facts of the dismissed information at the sentencing hearing. In her sentencing memo, the prosecutor came dangerously close to breaching the plea agreement by characterizing K.S. as a victim and stating that the case was not dismissed because of a lack of evidence. However, the sentencing memorandum also clearly stated Hill should only be sentenced for the offense to which he pled guilty.

---

[2] Backdoor: an indirect, surreptitious, under-handed, or illegal means or way. *Webster's Third New International Dictionary: of the English language, unabridged* 158 (Philip Babcock Gove et al. eds., Merriam-Webster Inc. 2002).

[3] Lip service: service consisting only of avowed expressions of adherence, devotion or allegiance; service by words but not by deeds. *Webster's Third New International Dictionary: of the English language, unabridged* 1319.

¶31 We do not conclude the State violated its plea agreement by reminding the District Court to consider a dismissed charge of which it was already aware. The statutes provide, and our cases firmly establish, that a sentencing court may consider any relevant evidence relating to the character of the defendant, his history, his mental and physical condition, and the broad spectrum of incidents making up his background. This includes other acts, even those which are dismissed pursuant to a plea bargain agreement. *State v. Mason*, 2003 MT 371, ¶¶ 23-25, 319 Mont. 117, 82 P.3d 903, *overruled on other grounds, State v. Herman*, 2008 MT 187, 343 Mont. 494, 188 P.3d 978; *State v. Collier*, 277 Mont. 46, 63, 919 P.2d 376, 387 (1996); *State v. Baldwin*, 192 Mont. 521, 524, 629 P.2d 222, 224 (1981).

¶32 Before sentencing a sex offender, a district court is directed to consider a psychosexual evaluation as well as a PSI. Section 46-18-111(1), MCA. A PSI includes the circumstances of the offense and the defendant's history (including his criminal record and social history). Section 46-18-112, MCA. Psychosexual evaluations can include as much, if not more, in-depth information on a defendant's sexual history. Sentencing judges are directed to consider untoward sexual acts referenced in psychosexual evaluations. Section 46-18-111(1), MCA; *Legg*, ¶ 33.

¶33 Hill has a long, substantial, and documented history of sexual contacts with children resulting in opinions of treatment providers, professional evaluators, and probation officers that he is a danger to the community. Even his own counsel was forced to acknowledge that Hill should be supervised for the remainder of his life. Under the circumstances of this case, we conclude the State did not violate the plea bargain agreement in calling the District Court's attention to the dismissed charge of sexual abuse of children.

11

¶34   *Issue 2:   Did the District Court violate Hill's due process and Fifth Amendment rights by considering acts which Hill reported while he was in a sexual offender treatment program?*

¶35   Hill asserts the District Court violated his Fifth Amendment right against self-incrimination when, in sentencing him, it considered evidence of sexual contact with 12 or 13 children he reported while in treatment at Brown School.  Hill claims he was compelled to disclose these contacts under the consent decree entered in Youth Court in 2000.  He argues he was forced to choose between incriminating himself and being discharged from treatment, which would be a violation of the terms of the consent decree and result in a substantial penalty.

¶36   All citizens have the right against self incrimination in any criminal proceeding. Mont. Const. art II, § 25; U.S. Const. amend. V.  Generally, a person claiming Fifth Amendment protection must affirmatively invoke it, or it is deemed waived.  *Fuller*, 276 Mont. at 160, 915 P.2d at 812 (citing *Garner v. United States*, 424 U.S. 648, 654, 96 S. Ct. 1178, 1182 (1976)).  However, if an individual is not free to admit, deny, or refuse to answer, the privilege can be self-executing and express invocation of the privilege is unnecessary.  *Fuller*, 276 Mont. at 161, 915 P.2d at 812.  In circumstances where an accused cannot elect to exercise his right to remain silent because he faces substantial penalties if he chooses not to speak, the State is prevented from using the compelled statements in later criminal proceedings.  This is called a "classic penalty situation."  *Minnesota v. Murphy*, 465 U.S. 420, 434, 104 S. Ct. 1136, 1145-46 (1984) (cited in *Fuller*, 276 Mont. at 162, 915 P.2d at 813).

12

¶37 Hill was not placed in a classic penalty situation. Rather, Hill was in a classic plea bargain situation. *See In re R.L.H.*, 2005 MT 177, ¶ 38, 327 Mont. 520, 116 P.3d 791. In the 2000 consent decree, the State offered Hill treatment in exchange for his admission to the offense of misdemeanor assault and his agreement to undergo treatment at YTC. Unlike *Fuller*, if Hill declined to reveal his prior sexual contacts, he was not faced with prison. *Fuller*, 276 Mont. at 165, 915 P.2d at 815. Hill merely faced being placed in the same position he was in before accepting the consent decree. This is not a classic penalty situation. *See R.L.H.*, ¶ 38. In addition, Hill has not faced prosecution for his disclosed acts. *See Fuller*, 276 Mont. at 163, 915 P.2d at 814.

¶38 Further, Hill did not face substantial penalties if he failed to disclose his prior sexual contacts. He reported this information as a part of his treatment at Brown School after he already violated the consent decree by being ousted from YTC. There is nothing in the record indicating he faced revocation of the consent decree if he simply declined to admit these sexual contacts while at Brown School. *See Fuller*, 276 Mont. at 163-64, 915 P.2d at 814. To the contrary, even though YTC terminated him, the consent decree was not revoked. Nor was it revoked when Hill did not complete treatment at Brown School. True, the remote possibility existed that a juvenile probation officer would place him in juvenile detention for ten days. However, considering Hill's history and situation, we can hardly conclude this was a substantial enough penalty to create a classic penalty situation.

¶39 The District Court did not err in considering information concerning Hill's character, history, mental and physical condition, and background, which included Dr. North's psychosexual evaluation noting Hill's self-reported sexual contacts with 12 or 13 children.

¶40    *Issue 3: Did the District Court err by designating Hill a Level 3 sex offender?*

¶41    Hill claims the District Court erred in designating him a Level 3 sex offender because it relied on testimony from Dr. North instead of Dr. Zook.  Alternatively, Hill contends that Dr. North did not specifically state Hill was a "sexually violent predator," and this precludes the District Court from designating him a Level 3 offender.

¶42    Section 46-23-509, MCA, provides:

> (2) Prior to sentencing of a person convicted of a sexual offense, the department or a sexual offender evaluator shall provide the court with a sexual offender evaluation report recommending one of the following levels of designation for the offender:
> (a)    level 1, the risk of a repeat sexual offense is low;
> (b)    level 2, the risk of a repeat sexual offense is moderate;
> (c)    level 3, the risk of a repeat sexual offense is high, there is a threat to public safety, and the sexual offender evaluator believes that the offender is a sexually violent predator.
>
> (3)  Upon sentencing the offender, the court shall:
> (a)    review the sexual offender evaluation report, any statement by a victim, and any statement by the offender;
> (b)    designate the offender as level 1, 2, or 3; and
> (c)    designate a level 3 offender as a sexually violent predator.

The statute does not require the sentencing court to accept the recommendation of the sexual offender evaluation.  The district court makes the designation in the exercise of its discretion.  A district court abuses its discretion when it "acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *State v. Rovin*, 2009 MT 16, ¶ 23, 349 Mont. 57, 201 P.3d 780.

¶43    Hill had a history of multiple sexual contacts with young children of both sexes spanning at least seven years.  He admitted to multiple sexual assaults, failed two sexual

offender treatment programs, returned to the community and then committed the felony offense for which he was being sentenced. Dr. North determined he was at a high risk to reoffend. The author of the PSI concluded Hill should be designated a Level 3 offender as he was a danger to the community. Dr. Zook and Hill's counsel acknowledged he needed supervision for the remainder of his life. Based on the information before it, the District Court found Hill to be a danger to young children and designated him a Level 3 sexual offender. Such a designation is not an abuse of discretion.

¶44 The judgment of the District Court is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ JIM RICE
/S/ BRIAN MORRIS
/S/ KURT KRUEGER
District Court Judge Kurt Krueger sitting
for former Chief Justice Karla M. Gray

Justice Patricia O. Cotter concurs.

¶45 I concur in the Court's resolution of Issues Two and Three. Although I concur in the ultimate result of the Court's decision on Issue One, I strongly disagree with the analysis leading to that result.

¶46 As noted by the Court at ¶ 31, this Court concluded in *State v. Mason*, 2003 MT 371, 319 Mont. 117, 82 P.3d 903 that it was permissible for a district court at sentencing to

15

consider evidence that the defendant had committed other crimes or acts, even if those crimes were simply charged and then dismissed pursuant to a plea bargain agreement. Thus, a court may consider at sentencing ostensible crimes or misconduct which has neither been admitted by the defendant nor proven by the State to have occurred. I joined Justice Leaphart's dissent from that decision, and continue to believe the Court's decision in this regard is wrong. However, I recognize that this is nonetheless the law of this state.

¶47 Notably, Mason premised his challenge to the district court's consideration of the other crimes evidence on due process grounds. *Mason,* ¶ 15. Here, by contrast, Hill expressly challenges the inclusion of the dismissed charge in the State's presentation to the District Court at sentencing, as a breach of the plea bargain agreement. I would conclude the State did breach the plea agreement.

¶48 The Court says that the plea agreement does not preclude the State from presenting the facts of the dismissed information at sentencing. We then say the prosecutor "came dangerously close to breaching the plea agreement by characterizing K.S. as a victim and stating that the case was not dismissed because of a lack of evidence." (Opinion, ¶ 30), but we then conclude she didn't come close enough. With due respect, the prosecutor crossed the line we have set for plea bargain enforcement, and we have wrongly countenanced that conduct.

¶49 We have repeatedly held that a plea agreement is a contract between the State and the defendant, and is subject to contract law standards. *State v. Rardon*, 2002 MT 345, ¶ 18, 313 Mont. 321, 61 P.3d 132 (*Rardon II*). We have also said that the State may not retain the benefit of its plea bargain agreement, but avoid its obligation. *Rardon II*, ¶ 18 (citing *State v.*

*Bowley*, 282 Mont. 298, 314, 938 P.2d 592, 601 (1997) (Trieweiler, J., specially concurring)). Here, the State quite plainly both retained the benefit of its plea agreement and avoided its obligation when it agreed in exchange for Hill's plea to dismiss the information alleging sexual abuse of children, but then turned around and used the dismissed information evidence to buttress its sentencing argument. When the State told the District Court it must not forget that the defendant had victimized K.S., that the case against Hill for the offense was strong, and that K.S. had been substantially impacted by the crime, it hardly complied with the "strict and meticulous standards of both promise and performance" which we have held are attendant to plea agreements. *Rardon II*, ¶ 18.

¶50 In *Rardon II,* we held that soliciting evidence in an effort to enhance a sentence undercut the recommended disposition which formed the consideration for the plea agreement, and that such conduct was unacceptable. *Rardon II, ¶*22. It is simply disingenuous to say, as we do here, that offering evidence gleaned from a charge that was dismissed *as consideration for a plea of guilty* does not amount to a breach of the plea agreement. Clearly, the consideration for Hill's plea was dismissal of the very charge which the State then resurrected in its endeavor to enhance Hill's sentence. I would conclude there was a failure of consideration as a result of the State's conduct.

¶51 When consideration fails, the failure constitutes a material breach of the contract, which gives rise to the equitable remedy of rescission of the agreement. *Norwood v. Service Distributing, Inc.,* 2000 MT 4, ¶¶ 32-33, 297 Mont. 473, 994 P.2d 25. In *State v. Rardon*, 1999 MT 220, 296 Mont. 19, 986 P.2d 424 (*Rardon I*), we held that where the government breaches a plea agreement, the defendant may seek to withdraw his guilty plea or seek

17

specific performance of the plea agreement. *Rardon I,* ¶ 13. Here, however, Hill did not seek either remedy in the District Court, nor did he do so in his briefs on appeal to this Court, seeking instead only to reverse his conviction. Because he did not seek rescission or specific performance in the District Court, we will not consider such a request made for the first time on appeal. *Whitehorn v. Whitehorn Farms, Inc.,* 2008 MT 361, ¶ 21, 346 Mont. 394, 195 P.3d 836 (quotation omitted) ("The general rule in Montana is that this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory."). It is for this reason alone that I concur in the ultimate result reached by the Court as to Issue One.

¶52     I concur.


/S/ PATRICIA COTTER



Justice James C. Nelson and Justice W. William Leaphart join in the Concurrence of Justice Patricia O. Cotter.


/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART

18