DA 09-0581

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 225

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

SUMMER LEE MANYWHITEHORSES,

      Defendant and Appellant.

APPEAL FROM:      District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC 08-356
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Eli M. Parker, Office of the State Public Defender, Missoula, Montana

      For Appellee:

        Steve Bullock, Montana Attorney General; Tammy K Plubell, Assistant Attorney General, Helena, Montana

        John Parker, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  August 10, 2010

Decided:  October 26, 2010

Filed:

_____
Clerk

W. William Leaphart delivered the Opinion of the Court.

¶1 Appellant Summer Lee Manywhitehorses (Manywhitehorses) appeals from the sentence imposed by the Eighth Judicial District Court, Cascade County, for her convictions of negligent homicide and tampering with physical evidence.

¶2 We consider the following issue on appeal:

¶3 **Whether the prosecutor's conduct at sentencing breached the State's contractual obligations under the plea agreement.**

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On July 21, 2008, Manywhitehorses was arrested for driving under the influence after she failed to stop at a stop sign, lost control of her car, and struck a parked car before coming to a stop. After her arrest, the Department of Health and Human Services (DPHHS) initiated a Youth in Need of Care action to protect Manywhitehorses's children C.M. and J.M.

¶5 On August 14, 2008, C.M. and J.M. were adjudicated as youths in need of care and Manywhitehorses was ordered to advise DPHHS of J.M.'s location. Initially, Manywhitehorses informed DPHHS that J.M. was with Gilbert Barrientos (Barrientos) in Portland, Oregon. After contacting Barrientos, however, DPHHS determined that J.M. was not in Portland, Oregon and requested that J.M. be listed as a missing child.

¶6 On September 5, 2008, Detective McDermott of the Great Falls Police Department interviewed Manywhitehorses concerning J.M.'s whereabouts. After persisting in her story that J.M. was with Barrientos, Manywhitehorses finally conceded that J.M.'s body was in the car which the police had impounded after her DUI arrest on June 21, 2008.

2

After obtaining a search warrant, police found J.M.'s decomposed body in the trunk of Manywhitehorses's car. Manywhitehorses then informed Detective McDermott that on May 28, 2008, J.M. had fallen from his high chair and hit his head. Manywhitehorses explained that despite the fact that J.M.'s eyes had rolled back in his head, she determined that he would be "all right" and, out of fear that "they're going to think it was me," did not call an ambulance. Manywhitehorses further informed Detective McDermott that the next morning she discovered J.M. was not breathing and had in fact died during the night. Law enforcement subsequently determined that Manywhitehorses had placed J.M.'s body in her car on June 11, 2008, where the body remained until September 5, 2008. On September 22, 2008, the State charged Manywhitehorses with deliberate homicide along with negligent homicide and tampering with physical evidence.

¶7 On June 12, 2009, a change of plea hearing was held and, pursuant to the plea agreement, Manywhitehorses entered guilty pleas to negligent homicide and tampering with physical evidence. In exchange, the prosecutor dismissed the deliberate homicide charge and agreed to recommend a sentence of 20 years for the tampering with physical evidence charge. The prosecutor did not agree to recommend any particular sentence for the negligent homicide charge. During the change of plea hearing, Manywhitehorses also acknowledged that she understood the persistent felony offender statute allowed the State to recommend up to 100 years for the negligent homicide conviction. When asked by the District Court about her understanding of what the State intended to recommend at

sentencing, she responded, "[f]or tampering and negligence to run concurrent and that there's—it's all up to the judge, my sentence, pretty much." Pursuant to the plea agreement, Manywhitehorses admitted that on May 28 or 29, 2008, when her son "went into distress" she should have called for an ambulance and that had she done so J.M. may not have died. She also conceded that she concealed J.M.'s body in the trunk of her car until September 2008, even though she knew that law enforcement and DPHHS were looking for him.

¶8 On August 12, 2009, a sentencing hearing was held and the State called two witnesses to testify—Detective McDermott and Dr. Wells. When the State questioned Detective McDermott about statements he took from witnesses indicating that Manywhitehorses had abused J.M. in the past, the District Court explained that such testimony was not relevant to the negligent homicide conviction. The District Court again expressed concern when Dr. Wells indicated that she did not believe Manywhitehorses's claim that J.M. had fallen from his high chair testifying that, "it's exceedingly rare that that kind of short fall [from a highchair] . . . would be enough to cause the death of a child."

¶9 Pursuant to the plea agreement, the State recommended 20 years for the tampering with physical evidence charge. Pursuant to the persistent felony offender statute, the State recommended 100 years for the negligent homicide charge. The District Court refused to adopt the State's recommendation on the negligent homicide charge and

instead sentenced Manywhitehorses to concurrent terms of 40 years for negligent homicide and 15 years for tampering with physical evidence. Manywhitehorses appeals.

## STANDARD OF REVIEW

¶10    When a defendant alleges that a district court has erred in failing to require the state to abide by the plea agreement, the correct standard of review is abuse of discretion. *State v. Rardon*, 1999 MT 220, ¶ 11, 296 Mont. 19, 986 P.3d 424 (*Rardon I*). When, as here, the defendant does not point to any alleged error by the court, but rather claims that the prosecutor has breached the plea agreement, we employ a de novo standard of review. *State v. Rardon*, 2002 MT 345, ¶ 15, 314 Mont. 321, 61 P.3d 132 (*Rardon II*). A plea agreement is a contract and is thus subject to contract law standards. *State v. Hill*, 2009 MT 134, ¶ 49, 350 Mont. 296, 207 P.3d 307. It is well established that the question of whether a contract has been breached is a question of law which this Court reviews de novo. *State v. Shepard*, 2010 MT 20, ¶ 8, 355 Mont. 114, 225 P.3d 1217. Thus, the appropriate standard of review for addressing a claim of breach of the plea agreement is de novo.

## DISCUSSION

¶11    ***Whether the prosecutor's conduct at sentencing breached the State's contractual obligations under the plea agreement.***

¶12    On appeal, Manywhitehorses argues that the State breached its obligations under the plea agreement. Specifically, Manywhitehorses asserts that during the sentencing hearing the prosecutor improperly offered evidence that J.M.'s death resulted from deliberate homicide, rather than the negligent homicide charge to which she had plead

5

guilty. She also maintains that the prosecutor attacked the factual basis of her negligent homicide conviction and circumvented the plea agreement to "backdoor evidence of deliberate homicide through [her] tampering with physical evidence conviction." As a result of what she argues is a violation of the plea agreement, Manywhitehorses asserts that this Court should remand the case to the District Court with instructions to allow Manywhitehorses the opportunity to choose between the equitable remedies of rescission and specific performance.

¶13 The State counters that it did not breach the plea agreement and that the sentencing court was free to "consider any matter relevant to the disposition of an offender." The State points out that pursuant to the verbal plea agreement, it was free to make any sentence recommendation for the negligent homicide conviction within the statutory parameters of the persistent felony offender statute. Accordingly, the State maintains that the District Court properly considered Detective McDermott's testimony regarding Manywhitehorses's treatment of J.M. as well as Dr. Wells's testimony indicating that J.M. did not die from falling out of his high chair. The State argues that "[t]he sum total of [its] promises to Manywhitehorses [was] that if she pled guilty to negligent homicide and tampering with evidence, [the State] would recommend a 20-year sentence on the tampering with evidence conviction." Therefore, the State concludes that the plea agreement was not breached and the District Court did not err.

¶14 It is well established that a sentencing court "may consider any relevant evidence relating to the character of the defendant, his [or her] history, his [or her] mental and

6

physical condition, and the broad spectrum of incidents making up his [or her] background . . . includ[ing] other acts, even those which are dismissed pursuant to a plea bargain agreement." *Hill*, ¶ 31. While prosecutors who engage in plea bargaining must meet strict and meticulous standards of both promise and performance, "there are no hard and fast criteria defining a when a prosecutor has merely paid lip service to a plea agreement . . . ." *Id.* at ¶ 29. Rather, "[e]ach case stands or falls on the facts unique to it." *Rardon II*, ¶ 21.

¶15 Here, the plea agreement at issue provided that Manywhitehorses would plead guilty to negligent homicide and tampering with physical evidence in exchange for the prosecutor dismissing the deliberate homicide charge and agreeing to recommend a 20-year sentence on the tampering with physical evidence charge. The plea agreement contained no sentencing recommendation promises with respect to Manywhitehorses's conviction for negligent homicide. In other words, the plea agreement did not prohibit the State from recommending, and arguing in support of, up to a 100-year sentence as permitted by the persistent felony offender statute. This is exactly what the State did.

¶16 As we explained in *Hill*, evidence of a defendant's history, incidents making up a defendant's background, and even acts that have been dismissed pursuant to a plea agreement may be considered if they are relevant. *Hill*, ¶ 31. In Manywhitehorses's case, the evidence offered at sentencing, including photographs of J.M.'s body and testimony by Detective McDermott and Dr. Wells, was directly relevant to Manywhitehorses's history and the incidents leading up to J.M.'s death. Here, as in *Hill*,

7

we cannot conclude that the State violated the plea agreement. The State offered evidence and testimony that, while perhaps indicative of a deliberate homicide charge, was also relevant to the charges to which Manywhitehorses pled guilty.

¶17    Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ JIM RICE