FILED

04/18/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0080

DA 16-0080

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 88

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

JENNIFER ANN ELLISON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Stillwater, Cause No. DC 15-11
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Chief Appellate Defender, Alexander H. Pyle, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

          Nancy L. Rohde, Stillwater County Attorney, Columbus, Montana

Submitted on Briefs:  March 8, 2017

Decided:  April 18, 2017

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Defendant Jennifer Ann Ellison appeals the December 14, 2015 sentence and judgment by the Twenty-Second Judicial District Court, Stillwater County. We address:

*Issue One: Whether the State breached the term of the plea agreement that it recommend a deferred sentence on the criminal endangerment charge.*

*Issue Two: Whether the District Court erred in imposing the court information technology user surcharge per count and not per user.*

¶2 We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On January 19, 2015, Ellison drove while intoxicated and crashed her vehicle into an embankment after running another vehicle with four passengers off the road. She drove while her license was suspended or revoked and did not have proof of insurance. On March 10, 2015, the State charged Ellison with felony criminal endangerment pursuant to § 45-5-207(1), MCA, misdemeanor DUI (second offense) pursuant to § 61-8-401, MCA, misdemeanor failure to carry insurance pursuant to § 61-6-302(2), MCA, and misdemeanor driving with a suspended or revoked license, which was later amended to misdemeanor driving without a valid license pursuant to § 61-5-212(1)(a), MCA. Ellison was released on her own recognizance. While on release, Ellison cared for her ailing father, traveling from Stillwater County to Billings.

¶4 On April 30, 2015, the District Court amended Ellison's conditions of release, prohibiting her from operating a motor vehicle while her case was pending. On June 10,

2

2015, the State moved to revoke Ellison's release, alleging she tested positive for drug use and failed to comply with drug testing. The District Court issued a warrant for Ellison's arrest and set a hearing on the matter for June 18, 2015. At the hearing, the District Court found that Ellison violated the conditions of her release, set bond at $5,000, and conditioned release on her compliance with drug testing. Ellison posted bail and was again released.

¶5 On July 14, 2015, the State again moved to revoke Ellison's release because she again tested positive for drug use and failed to comply with drug testing. The District Court issued a warrant for Ellison's arrest, set bail at $25,000, and scheduled a hearing. On September 17, 2015, after Ellison failed to appear for the hearing, the District Court quashed the pending arrest warrant and issued a new arrest warrant with bond set at $100,000. Law enforcement arrested Ellison the same day. Ellison's father died a short time after her arrest.

¶6 On October 1, 2015, the State and Ellison negotiated a plea agreement. Ellison agreed to plead guilty to criminal endangerment, DUI, failure to carry proof of insurance, and driving without a valid driver's license. In exchange, the State agreed to recommend that Ellison receive a three-year deferred sentence for the criminal endangerment charge.[1] At the change-of-plea hearing held the same day, the District Court informed Ellison that it was not bound by the terms or conditions in the plea agreement, it was free to impose any lawful sentence that could be imposed for the offenses to which she was pleading

_____

[1] The recommended sentences for the misdemeanor charges are not at issue in this appeal.

3

guilty, and if it imposed a sentence greater than that recommended in the plea agreement, Ellison would not be allowed to withdraw her guilty plea. The District Court also informed Ellison of the maximum penalties for each offense and that the maximum possible sentence she could face was eleven and one half years of incarceration.

¶7 Before the sentencing hearing, the parties received the presentence investigation report (PSI). The PSI recommended a deferred sentence for the criminal endangerment offense consistent with the plea agreement. The PSI also recommended that the District Court impose conditions on the deferred sentence that included Ellison complete a chemical dependency evaluation, a mental health evaluation, and the Cognitive Principles and Restructuring program.

¶8 On December 4, 2015, at the sentencing hearing, the District Court asked the State for its sentencing recommendations, to which it replied "the State has set fort[h] in a plea agreement an imposition of deferred sentence for a period of three years from today's date." The State provided the District Court with no other support for a deferred sentence recommendation.

¶9 Ellison argued that a deferred sentence would allow her the opportunity to treat her neurological disorder,[2] which she contended was the underlying cause of her chemical dependency that led to her offenses. Ellison elaborated on the medical treatment she sought and her obstacles to recovery. The District Court asked the State for a response, to which the State expounded:

---

[2] Ellison suffers from atypical trigeminal neuralgia, a chronic pain condition.

Your Honor, the State remains concerned about her housing. She's been evicted where she lived. It's unclear to me whether she's going to be allowed to live in her father's home. I don't know the answer to that. So her housing is a problem.

And we've also – you know, she's incarcerated for a reason. And what we've dealt with over the last three to four months with her and her noncompliance, the State would remain concerned that that noncompliance is going to come rushing back. So I would only add that in terms of my recommendations.

Ellison did not object to the State's comments, and the District Court afforded Ellison the opportunity to respond to the State's concerns. Neither party presented evidence at the sentencing hearing.

¶10 The District Court declined to defer Ellison's sentence on the criminal endangerment charge because it remained unconvinced that Ellison could overcome her chemical dependency issues without the assistance of the Department of Corrections (DOC). Noting that Ellison provided no evidence of any pending medical treatment being scheduled, the District Court stated it could not use her potential treatment as a major factor in its considerations. Instead of the three-year deferred sentence recommended in the plea agreement, the District Court sentenced Ellison on her criminal endangerment charge to five years with the DOC with three years suspended. Also pertinent to this appeal, the District Court imposed four $10 court information technology surcharges for each count totaling $40 pursuant to § 3-1-317, MCA. Ellison timely appeals.

## STANDARDS OF REVIEW

¶11 The State's breach of a plea agreement is a question of law we review de novo. *State v. McDowell*, 2011 MT 75, ¶ 12, 360 Mont. 83, 253 P.3d 812. We consider errors claimed for the first time on appeal under the plain error doctrine, if the claimed errors

5

implicate a fundamental constitutional right and if not doing so leaves unsettled the fundamental fairness of the proceedings. *State v. Bartosh*, 2007 MT 59, ¶ 23, 336 Mont. 212, 154 P.3d 58 (citing *State v. Rardon*, 2002 MT 345, ¶¶ 16-17, 313 Mont. 321, 61 P.3d 132 (*Rardon II*))

¶12 We review a defendant's sentence to more than one year of actual incarceration for legality only. *McDowell*, ¶ 11.

## DISCUSSION

¶13 *Issue One: Whether the State breached the term of the plea agreement that it recommend a deferred sentence on the criminal endangerment charge.*

¶14 We have repeatedly held that a plea agreement is a contract between the State and a defendant and is subject to contract law standards. *Rardon II*, ¶ 18 (citing *State v. Munoz*, 2001 MT 85, ¶ 14, 305 Mont. 139, 23 P.3d 922). A defendant waives fundamental constitutional rights in exchange for the State's assurances in a plea agreement. Thus, to ensure fundamental fairness the "plea bargaining must meet strict and meticulous standards of both promise and performance. . . ." *State v. LaMere*, 272 Mont. 355, 359, 900 P.2d 926, 929 (1995) (citing *State v. Allen*, 199 Mont. 204, 208-09, 645 P.2d 380, 382 (1981)). "No principle of fairness or contract law allows the State to retain the benefit of its agreement and avoid its obligation." *Rardon II*, ¶ 18 (citing *State v. Bowley*, 282 Mont. 298, 314, 938 P.2d 592, 601 (1997) (Trieweiler, J., specially concurring)). "When reviewing a breached plea agreement for plain error . . . we must establish whether the breach was 'so obvious and substantial that failure to notice and correct it affected the fairness, integrity or public reputation of the judicial proceedings.'" *Rardon II*, ¶ 16.

6

¶15 The State is obligated to approach sentencing in a manner that will not undermine the plea agreement when the State agrees to recommend a specific sentence. *Bartosh*, ¶ 19. A prosecutor may not present information and aggressively solicit testimony clearly intended to undermine the plea agreement and convince the district court the bargained sentence recommendation should not be accepted. *Bartosh*, ¶ 19 (citing *Rardon II*, ¶ 21). Furthermore, a prosecutor must give more than lip service to the plea agreement. *State v. Manywhitehorses*, 2010 MT 225, ¶ 14, 358 Mont. 46, 243 P.3d 412 (citing *State v. Hill*, 2009 MT 134, ¶ 31, 350 Mont. 296, 207 P.3d 307). However, we have no decisive criteria establishing when a prosecutor has merely paid lip service to a plea agreement, because "[e]ach case stands or fails on the facts unique to it." *Hill*, ¶ 29 (quoting *Rardon II*, ¶ 21).

¶16 For the first time on appeal, Ellison argues the State impugned the fairness of the proceedings by not providing the District Court any reasons for the plea agreement's deferred sentence recommendation. Ellison contends that the State's comments regarding Ellison's previous noncompliance while out on bail served no other purpose than to influence the District Court to impose a harsher sentence than the deferred sentence the State promised to pursue in the plea agreement. Therefore, according to Ellison, the State breached the strict and meticulous standards governing plea bargaining by undermining the plea agreement and rendering it illusory.

¶17 The State responds that the unique set of facts in this case demonstrate that the prosecutor's comments did not breach the plea agreement and must be considered in the broader context of the proceedings. At the change-of-plea hearing, the prosecutor expressed concern about Ellison's chemical dependency and her inability to remain sober

7

during pretrial release, yet the prosecutor also expressed a willingness to recommend a deferred sentence and hoped Ellison would take advantage of its benefits. At sentencing, the prosecutor responded to remarks by defense counsel and Ellison regarding her medical issues and substance abuse by expressing the State's continued concerns regarding Ellison's housing situation and chemical dependency. The State contends the sentencing judge had the discretion to determine the appropriate sentence and, irrespective of the prosecutor's comments, was well aware of Ellison's severe chemical dependency and abysmal behavior while on pretrial release. We agree.

¶18     In determining the appropriate sentence, the sentencing court considers any relevant evidence relating to the nature and circumstances of the crime, the character of the defendant, her background and history, her mental and physical condition, and any evidence the sentencing court considers to have probative value. *Bartosh*, ¶ 21 (citing *State v. Mason*, 2003 MT 371, ¶ 23, 319 Mont. 117, 82 P.3d 903). Here, the District Court explained:

> Having carefully considered the presentence report, the recommendation of counsel and the statement of Ms. Ellison, the Court remains unconvinced that Ms. Ellison, without the assistance of the Department of Corrections is going to be able to get a handle on the chemical dependency issues that are evident in this case.

The District Court also stated that without evidence of Ellison's medical treatment being scheduled, it could not consider her medical treatment as a factor in determining her sentence.

¶19     Within the context of the sentencing hearing, the prosecutor's comments do not qualify as a breach of the plea agreement. Ellison was seeking accommodations for the

8

State's added Condition 38 related to drug monitoring while on probation, and the prosecutor was responding to defense counsel laying the framework for future leniency for any drug-related probation violation based on Ellison's medical condition that necessitates pain medication. "If a defendant chooses to present information in support of a sentence he argues for, the State may counter with testimony to the effect that such information is misleading or untrue, without breaching a plea agreement." *Bartosh*, ¶ 22. The record here evinces that the State's comments were in response to Ellison's argument seeking accommodations for her medical condition and related pain medications she continually abused during the proceedings. The State was entitled to respond regarding the challenges Ellison faced, and those comments do not constitute an attempt to undermine the plea agreement's recommended deferred sentence. Having presided over the entirety of the proceedings against Ellison, including all three revocations of pretrial release, the sentencing judge was well aware of Ellison's prior noncompliance and severe chemical dependency issues. The State's addressing of those issues, in the context in which it did, did not violate the plea agreement. *See Hill*, ¶¶ 30-31. The record reflects that the District Court recognized the recommended deferred sentence did not afford Ellison access to structured treatment programs that would be available through DOC. The District Court, therefore, rejected the plea agreement in order to fashion a sentence it deemed necessary to assist Ellison in treating her chemical dependency issues, not because of any subterfuge on the part of the State.

¶20 Ellison relies heavily on our Opinions in *LaMere* and *Rardon II*. The facts of this case are distinguishable from both cases. In *LaMere*, the State and LaMere reached a plea

9

agreement in which LaMere agreed to plead guilty to one felony theft charge and one misdemeanor theft charge, in addition to paying restitution for damages he caused, and the State would recommend a deferred imposition of sentence for the felony theft charge and a six-month suspended sentence for the misdemeanor theft charge. *LaMere*, 272 Mont. at 356, 200 P.2d at 927. At LaMere's sentencing, the county attorney filled in for the deputy county attorney who negotiated the plea agreement, and emphasized LaMere's alcohol problems and failure to complete anything he started followed by an unsupported recommendation for a deferred imposition of sentence. *LaMere*, 272 Mont. at 357, 200 P.2d at 927-28. Based on this record, we concluded that the district court relied on the State's comments that suggested a deferred sentence was inappropriate and held that the State failed to adequately support the plea agreement. *LaMere*, 272 Mont. at 360, 200 P.2d at 929.

¶21    In *Rardon II*, Rardon appealed the sentence imposed upon him on remand after we reversed his initial sentence in *Rardon I* and remanded for resentencing on the grounds that the State had breached the plea agreement.[3] On remand, the State agreed to recommend "a sentence in conformity with whatever recommendation may result from the Sexual Offender Amenability Evaluation and Pre-Sentence Investigation." *Rardon II*, ¶ 5. The sexual offender evaluation recommended Rardon be accepted, on a probationary status, into an outpatient treatment program without specifying any term of years. The PSI

---

[3] In *State v. Rardon*, 1999 MT 220, ¶ 18, 296 Mont. 19, 986 P.2d 424 (*Rardon I*), we reversed and remanded to allow Rardon to withdraw his guilty plea or require specific performance of the plea agreement and order a new sentencing hearing be conducted by a different judge after concluding the State breached the plea agreement by not strictly abiding by its terms.

10

recommended Rardon be sentenced to 40 years at Montana State Prison with 20 years suspended. *Rardon II*, ¶ 6. Although the State's attorney recommended the sentence recommended in the PSI, as per the plea agreement, he solicited inflammatory testimony from the victims as to the length of sentence to be recommended under the plea agreement, attempted to solicit testimony from Rardon that he should be imprisoned until Rardon's grandchildren were grown, and preceded his sentence recommendation by emphasizing the negative aspects of Rardon's sexual offender evaluation. *Rardon II*, ¶¶ 19-20. The district court rejected the recommended sentence, and sentenced Rardon to 75 years in the Montana State Prison with 25 years suspended. *Rardon II*, ¶ 12. Recognizing that "[t]here are no hard and fast criteria that define when a prosecutor has merely paid 'lip service' to a plea agreement as opposed to . . . fairly, but strongly, present[ing] the State's case in order to influence a court to accept its sentencing recommendation," we assessed the prosecutor's conduct in *Rardon II* and concluded that, based on that record, the State breached the plea agreement. *Rardon II*, ¶ 21. We held: "[I]t is not acceptable for a prosecutor to aggressively solicit testimony that is clearly intended to undermine the plea agreement and to convince the sentencing court that a plea bargained sentence recommendation should not be accepted." *Rardon II*, ¶ 22 (emphasis in the original).

¶22 Unlike the prosecutor's conduct in *LaMere* and *Rardon II*, the record in this case does not support a conclusion that the prosecutor paid mere lip service to a recommended sentence while advocating for a harsher disposition. The District Court was already acutely aware of Ellison's poor performance and noncompliance during the proceedings, and concluded that Ellison required intensive treatment and structure only available through

11

DOC for her chemical dependency issues. The prosecutor's comments regarding concerns for Ellison's housing situation, her noncompliance while on pretrial release, and especially her chemical dependency issues were merely addressing the challenges Ellison faced, which were obvious to everybody. The record does not indicate an attempt to undermine the recommendation for a deferred sentence or a breach of the plea agreement.

¶23    *Issue Two: Whether the District Court erred in imposing the court information technology user surcharge per count and not per user.*

¶24    The State concedes the imposition of the court information technology user surcharge per count and not per user is illegal under § 3-1-317(a), MCA. The statute authorizes all courts to impose "on *a defendant* in criminal cases, a $ 10 *user* surcharge for any conduct made criminal by state statute . . . ." Section 3-1-317(1)(a), MCA (emphasis added). We recently held "the surcharge is authorized per user upon conviction, and not per conviction of that user." *State v. Pope*, 2017 MT 12, 386 Mont. 194, 387 P3d 870. The District Court erred when it imposed the court technology surcharges on a per count basis.

## CONCLUSION

¶25    We conclude the State did not breach the plea agreement and affirm the District Court's sentence. We reverse the District Court's imposition of the court technology surcharge imposed on a per count basis, and remand to modify the imposition of the surcharge to a per user basis, for a total of one $10 surcharge.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE