

DA 07-0674

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 16

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

DAVID ISAAC ROVIN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Pondera, Cause No. DC-02-12
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Nancy Schwartz, Attorney at Law, Billings, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; Jonathan M. Krauss,
Assistant Attorney General, Helena, Montana

          Mary Ann Ries, Pondera County Attorney, Conrad, Montana

Submitted on Briefs:  December 3, 2008

Decided:  January 27, 2009

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    David Isaac Rovin (Rovin) appeals from an order of the Ninth Judicial District Court, Pondera County, revoking his suspended sentence. We affirm.

¶2    Rovin presents the following issues for review:

¶3    Whether the District Court abused its discretion by revoking Rovin's suspended sentence and incarcerating Rovin despite the fact that Rovin suffers from mental illness.

¶4    Whether Rovin's trial counsel rendered ineffective assistance of counsel during the revocation proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5    The State charged Rovin with felony sexual assault. The State alleged that Rovin, age 20 at the time, had put his arm around a 12-year old girl's shoulders and touched her breasts and her buttocks.

¶6    Rovin entered a plea of not guilty in city court and requested a preliminary examination. The court appointed William Hunt, Jr. (Hunt), on June 25, 2002, to represent Rovin. The city court held a preliminary examination on July 26, 2002, and found sufficient probable cause for Rovin to be charged with felony sexual assault on a minor. The city court transferred the matter to the District Court on July 31, 2002. The State charged Rovin by information on August 19, 2002, with felony sexual assault.

¶7    The District Court arraigned Rovin on September 9, 2002. Hunt appeared on Rovin's behalf. The court advised Rovin of the nature of the charge against him and the maximum

sentence after a plea or verdict of guilty. The court also advised Rovin of his rights. Rovin entered a plea of "not guilty."

¶8 The State and Rovin eventually reached an agreement that required Rovin to obtain a psychosexual evaluation. Rovin moved the court to order Dr. Donna Zook (Zook), sex offender therapist and member of the Montana Sex Offender Treatment Association, to conduct his psychosexual evaluation. Rovin informed the court that he had signed the plea agreement and that he would enter a change of plea. Zook evaluated Rovin. Zook designated Rovin a level 2 sexual offender and recommended community-based treatment with specific stipulations.

¶9 Rovin, accompanied by counsel, appeared for his change of plea hearing on January 20, 2004. Rovin informed the court that he had discussed the plea agreement with his attorney. Rovin understood that he had waived his rights when he agreed to a plea agreement. Rovin further informed the court that he was not under the influence of alcohol or drugs and that he had not been coerced to sign the agreement or to enter his guilty plea. Rovin also stated that it was in his best interest to plead guilty and that he had been satisfied with the services of his counsel. The court advised Rovin of his rights a second time. Rovin entered a plea of guilty to felony sexual assault. The court determined that a factual basis existed and accepted his guilty plea. The court convicted Rovin of felony sexual assault.

¶10 The court conducted a sentencing hearing on February 9, 2004. The court considered the plea agreement, the presentence investigation report (PSI), and counsel's recommendations. The court sentenced Rovin to the Montana State Prison (MSP) for a term

of ten years for felony sexual assault. The court suspended all but 71 days of the ten-year sentence. The court ordered the suspended sentence subject to certain terms and conditions. One condition required Rovin to register as a level 2 sexual offender, consistent with Zook's psychosexual evaluation. Another condition required Rovin to file his community-based treatment program with the court and his probation officer within 30 days of sentencing. The community-based treatment condition specifically called for revocation of Rovin's suspended sentence in the event of Rovin's failure to abide by the condition.

¶11 The State petitioned to revoke Rovin's suspended sentence less than a month later. The State alleged that Rovin had violated a number of conditions. The alleged violations included Rovin's failure to maintain a residence and Rovin's failure to remain law abiding. The State also alleged that Rovin continued to have contact with people under the age of 18. The State further alleged that Rovin failed to establish or comply with a community-based sexual offender treatment plan.

¶12 Zook updated Rovin's psychosexual evaluation before the revocation proceeding based on new information provided by Canadian law enforcement. The Canadian authorities provided Rovin's extensive sexual offense history from the time that he was 14 years old. Rovin's sexual offense history includes multiple incidents of grabbing female's breasts and buttocks, kissing, and sexual remarks and gestures to females. Canadian law enforcement had designated Rovin a sexual predator and institutionalized him due to his risk to reoffend. Rovin admitted that he was supposed to reside in a group home until the age of 20, due to his immaturity and need to learn personal hygiene and other essential life skills.

4

¶13    Zook's update recommended a complete psychiatric evaluation at the Montana State Hospital (MSH). Zook believed that a psychiatric evaluation served both Rovin's best interests and the community's best interests. Zook reported that Rovin needed to be stabilized with medication before he could be returned to the community for outpatient case management and sexual offender treatment services. Zook recommended that authorities monitor Rovin's compliance with any required medication. Zook deemed Rovin to be a sexual predator who posed a risk to the community. She noted that Rovin suffers from an untreated serious mental disorder with psychotic features in addition to his sexual assault behaviors. Zook opined that Rovin's mental disorder renders him indigent, jobless, and delusional.

¶14    The court re-appointed Hunt as Rovin's counsel on March 9, 2004. Rovin, through Hunt, moved the court on March 22, 2004, to commit him to the MSH. Rovin informed Hunt that his hallucinations had worsened since his incarceration. Rovin further reported to Hunt that his suicidal ideation had intensified and that he could "no longer control the voices" in his head that tell him to kill himself. The court committed Rovin on March 23, 2004, to MSH for not more than sixty days. The court reasoned that MSH needed to evaluate Rovin to determine his fitness to proceed and stand trial in his pending criminal matter.

¶15    Rovin appeared before the court on June 21, 2004, represented by Hunt. The court advised Rovin of his rights. Rovin acknowledged that he understood. The court questioned Rovin. The court satisfied itself that Rovin was not currently on any medications, that Rovin

5

did not have any disabilities, and that Rovin was not under the influence of any intoxicating substances or drugs. Rovin admitted to violating the "change of residence" condition and "community-based treatment plan" condition of his suspended sentence. The court determined that a factual basis existed to support Rovin's admissions to the probation violations. Rovin advised the court that he had discussed the consequences of his admissions with Hunt.

¶16 The court sentenced Rovin to a 10-year commitment to the Department of Corrections (DOC). The court suspended all but three years of the ten-year commitment. The court allowed Rovin credit for the 117 days that he had been held in custody awaiting disposition of the proceedings. The court refused Rovin credit, however, for time served on the suspended sentence. The court imposed certain terms and conditions on Rovin's suspended sentence. The DOC released Rovin on February 24, 2007.

¶17 The State again petitioned to revoke Rovin's suspended sentence on June 4, 2007. The court held an evidentiary hearing regarding the State's allegations. The State alleged that Rovin had failed to follow all treatment conditions. Rovin's ex-wife informed the State that he had sent her several emails, including one that was threatening in nature. Rovin reported that he had been going to a park in violation of the sexual offender treatment rules. Rovin also had failed to complete sexual offender treatment.

¶18 The court advised Rovin of his rights. Rovin acknowledged that he understood. The court questioned Rovin to determine whether he was competent to proceed. Rovin admitted to failing to follow all treatment conditions and failing to complete sexual offender

6

treatment. The court again determined that a factual basis existed to support Rovin's admissions. Rovin advised the court that he had discussed the consequences of his admissions with Hunt. The court determined that Rovin had violated the terms of his probationary sentence and revoked his suspended sentence.

¶19 Rovin appeared at his dispositional hearing on September 17, 2007, represented by Hunt. Rovin's probation officer, John Boyd (Boyd), testified that Rovin would benefit from a commitment to the Department of Health and Human Services (DHHS) in light of Rovin's serious mental illness. Boyd acknowledged, however, that the law allows a commitment to DHHS only on an offender's original sentence. Boyd thus recommended that Rovin serve the remainder of his sentence in MSP in order to ensure Rovin's safety and the community's safety. Boyd agreed that MSP had counselors available to address Rovin's mental illness and that Rovin also could receive sexual offender treatment at MSP.

¶20 Hunt inquired as to whether Boyd had considered alternatives in lieu of incarceration. Boyd testified that the pre-release centers administered by the DOC were not equipped to handle the seriously mentally ill. Boyd also believed that Rovin's sexual offense conviction would prohibit his placement in a group home.

¶21 Hunt advised the court that Rovin expected incarceration without any time suspended. Hunt agreed that suspension was "going to jerk him out of a system he already knows." Hunt pointed out to the court, however, that MSP previously had provided Rovin with insufficient mental health treatment. Hunt informed the court that Rovin's mental health evaluation had been updated. Hunt chose not to submit an updated mental health evaluation

7

to the court, however, as he was not going to rely on it. Hunt acknowledged that Boyd, Zook, and Rovin's current sexual offender counselor believed community-based treatment to be insufficient. Rovin himself raised no issues with the prospect of incarceration during the allocution. Rovin simply asked the court to consider placement in a treatment-based program or group home once his sentence expired in the event that his mental health deteriorates.

¶22 The court ordered Rovin to serve the remaining seven years of his sentence at MSP. The court allowed Rovin credit for time served from May 23, 2007. The court cited various facts to support its sentence. These facts included Rovin's inability to be treated in a community setting and his inability to care for himself. The court also pointed out that incarceration would allow Rovin an opportunity to complete sexual offender treatment. The court further cited concern for the community's safety. Rovin appeals.

## STANDARD OF REVIEW

¶23 We review a district court's decision to revoke a suspended sentence to determine whether the court abused its discretion and whether a preponderance of the evidence supported the court's decision. *State v. Shockley*, 2001 MT 180, ¶ 8, 306 Mont. 196, ¶ 8, 31 P.3d 350, ¶ 8. This Court will not intervene absent an abuse of discretion. *State v. Burke*, 2005 MT 250, ¶ 11, 329 Mont. 1, ¶ 11, 122 P.3d 427, ¶ 11. A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *Burke*, ¶ 11.

8

¶24 A claim of ineffective assistance of counsel involves a mixed question of law and fact that we review de novo. *State v. Herman*, 2008 MT 187, ¶ 10, 343 Mont. 494, ¶ 10, 188 P.3d 978, ¶ 10. We review claims of ineffective assistance of counsel if the claims are based solely on the record. *State v. Lewis*, 2007 MT 16, ¶ 8, 335 Mont. 331, ¶ 8, 151 P.3d 883, ¶ 8. We apply the two-prong test adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), to determine whether counsel's performance was constitutionally deficient. *State v. Russell*, 2008 MT 417, ¶ 33, 347 Mont. 301, ¶ 33, ___ P.3d ___, ¶ 33. The two-part test in *Strickland* requires the defendant to show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, ¶ 10, 183 P.3d 861, ¶ 10. The defendant bears the burden to show that his counsel's representation fell below an objective standard of reasonableness. *Whitlow*, ¶ 14.

**DISCUSSION**

¶25 *Whether the District Court abused its discretion by revoking Rovin's suspended sentence and incarcerating Rovin despite the fact that Rovin suffers from mental illness.*

¶26 Rovin contends that incarceration fails to achieve rehabilitation and thus violates his right to due process. Rovin points to Boyd's violation report that indicates his actions were not willful, but rather resulted from Rovin's "inability to conform to societal norms and public behavior, through no other reason than being mentally ill." Rovin contends that his mental illness required the court to consider alternative placements to incarceration.

¶27    The State argues that Rovin failed to object when the court revoked his suspended sentence and imposed incarceration. The State further argues that the record reflects that the court, in fact, considered various alternatives. The court rejected those alternatives for both Rovin's and the community's safety. The State further contends that Rovin fails to satisfy any of the statutory exceptions in § 46-20-701(2), MCA, that allow review.

¶28    Rovin concedes that he raises these issues for the first time on appeal. Rovin argues, however, that a manifest miscarriage of justice requires plain error review. We have stated repeatedly that we will not consider an issue not timely raised in the district court, absent plain error. *State v. Torgerson*, 2008 MT 303, ¶ 20, 345 Mont. 532, ¶ 20, 192 P.3d 695, ¶ 20. The State argues that no manifest or miscarriage of justice occurred that would warrant plain error review. The State points out that counsel represented Rovin at every stage of the proceedings, that Rovin knowingly and voluntarily admitted to the probation violations, and that Rovin waived his rights to appeal.

¶29    This Court will review claimed errors that implicate a criminal defendant's fundamental constitutional rights where failing to do so may result in a "manifest miscarriage of justice, leave the question of fundamental fairness of the proceedings unsettled, or compromise the integrity of the judicial process." *State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996). We explained in *State v. Mackrill*, 2008 MT 297, ¶ 48, 345 Mont. 469, ¶ 48, 191 P.3d 451, ¶ 48, that "we use our inherent power of common-law plain error review sparingly, on a case-by-case basis, and only in the aforementioned circumstances." A mere assertion that failure to review the claimed error may result in a

10

manifest miscarriage of justice, however, is not sufficient to implicate the plain error doctrine. *Mackrill*, ¶ 49 (citing M. R. App. P. 12(1)(f)).

¶30 Rovin has failed to demonstrate that his due process claim meets the elements of plain error review. Rovin simply argues that his claim satisfies the plain error review standard in light of Boyd's opinion that Rovin's actions were not willful and in light of his claim that the court imposed incarceration without considering alternative sentencing options. The record establishes that the District Court indeed considered sentencing alternatives. The court rejected community-based treatment, however, due to its concerns over Rovin's safety and the community's safety. Rovin's mere assertion that our failure to engage in plain error review may result in a manifest miscarriage of justice fails to satisfy M. R. App. P. 12(1)(f). We decline to conduct plain error review of Rovin's claim. *Torgerson*, ¶ 20.

¶31 *Whether Rovin's trial counsel rendered ineffective assistance of counsel during the revocation proceedings*.

¶32 Rovin alleges that Hunt advised him to admit to probation violations despite the statements in Boyd's violation report that Rovin had committed his actions unwillingly. Rovin also claims that Hunt's ineffective representation led him to admit to a probation violation that was not included in his original sentence. Rovin admits that his sexual offender treatment program contained a restriction on internet use. Rovin claims, however, that such a restriction itself was not a condition of his original sentence. Rovin cites *State v. Gillingham*, 2008 MT 38, 341 Mont. 325, 176 P.3d 1075, to support his claim that only the sentencing court can impose a condition to a sentence. Rovin thus contends that his internet

11

use did not violate any probation conditions. Rovin further claims that Hunt failed to provide the court with reasonable alternatives to incarceration.

¶33 The State contends that Hunt's representation reflected deliberate, informed, and strategic decision-making that was nothing short of competent. The State further asserts that any ineffective assistance of counsel claim would be inappropriate for review on direct appeal as it is non-record based.

¶34 We evaluate claims of counsel's deficiency under the two-prong test in *Strickland*. *Whitlow*, ¶ 10. We must first determine, however, whether the ineffective assistance of counsel claim is record or non-record based. *State v. St. Germain*, 2007 MT 28, ¶ 34, 336 Mont. 17, ¶ 34, 153 P.3d 591, ¶ 34. We follow the underlying principle that a silent record cannot rebut the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Notti*, 2003 MT 296, ¶ 7, 318 Mont. 146, ¶ 7, 79 P.3d 289, ¶ 7. Whether the record contains the answer as to *why* counsel took, or failed to take, action in providing a defense constitutes the operative test. *Notti*, ¶ 8. Claims involving "omissions of trial counsel frequently are ill-suited for direct appeal." *State v. Meyers*, 2007 MT 230, ¶ 10, 339 Mont. 160, ¶ 10, 168 P.3d 645, ¶ 10. Counsel's failure to object to testimony may be record-based and appropriate for direct appeal. The record commonly lacks, however, counsel's reasons for failing to object. *St. Germain*, ¶ 35. The matter is best suited for post-conviction proceedings if the record does not explain fully why counsel failed to object to the admission of evidence. *St. Germain*, ¶ 35. Post-conviction proceedings permit the district court to inquire further as to whether counsel's representation

12

was ineffective. *State v. Harris*, 2001 MT 231, ¶ 21, 306 Mont. 525, ¶ 21, 36 P.3d 372, ¶ 21.

¶35   The record here is silent as to *why* Hunt took, or failed to take, action in respect to Rovin's allegations. Rovin's allegations of ineffective assistance of counsel are best suited for post-conviction proceedings. *St. Germain*, ¶ 35. Post-conviction proceedings would permit Rovin the chance to develop a factual record as to why Hunt took a particular action, or failed to take an action, that Rovin believes resulted in ineffective assistance of counsel. *Harris*, ¶ 21.

¶36   Accordingly, we affirm the judgment of the District Court regarding Rovin's due process claim. We dismiss without prejudice Rovin's ineffective assistance of counsel claim to its being raised in a post-conviction relief proceeding.

/S/ BRIAN MORRIS

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER

Justice James C. Nelson concurs.

13

¶37 I concur fully in our Opinion. On the record before us, we could reach no other resolution of this appeal. Indeed, the trial court's decision to incarcerate Rovin was, necessarily, dictated by the dearth of alternate options that might have facilitated Rovin's treatment and rehabilitation.

¶38 I write separately only to underscore the following. In all probability Rovin's criminal and probation violations were not willful. As Dr. Zook testified, Rovin suffers from an untreated serious mental disorder with psychotic features in addition to his sexual assault behaviors. This mental disorder renders him indigent, jobless and delusional. Opinion, ¶13. Rovin cannot be treated in the community because of his mental health deficits and predatory sexual behaviors. Opinion, ¶¶ 20, 22. It is also apparent that incarceration will not likely improve upon his situation—while previously imprisoned he did not receive adequate mental health treatment; rather, his hallucinations and suicidal ideation intensified. Opinion, ¶¶ 14, 21.

¶39 This case is an unfortunate, but recurring, example of the failure of the criminal justice system to provide effective treatment options to trial judges when they must deal with persons suffering from serious mental illness coupled with criminal behavior. I submit that warehousing these individuals at the Montana State Prison is not an appropriate answer. While this approach may temporarily protect the public, it does little to treat the underlying cause of the individual's mental health problems; it does little to rehabilitate the individual so as to give him or her a chance to be a productive citizen; and it does little to protect the inviolable human dignity possessed by each of these individuals and guaranteed by Article

II, Section 4 of the Montana Constitution. *See Walker v. State*, 2003 MT 134, 316 Mont. 103, 68 P.3d 872.

¶40    I join our Opinion, but I do so acknowledging that the judiciary's hands are tied by our State's systemic failure to appropriately and humanely treat the mentally ill.

¶41    I concur.


/S/ JAMES C. NELSON