

DA 09-0304

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 9N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

M. J. V., III,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 2008-540
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Nancy G. Schwartz, NG Schwartz Law, PLLC, Billings, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General, Tammy K. Plubell,
Assistant Attorney General, Helena, Montana

          Dennis Paxinos, Yellowstone County Attorney, Scott D. Twito, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  January 7, 2010

Decided:  January 19, 2010

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     M.J.V., III (M.J.V.) appeals an order of the District Court for the Thirteenth Judicial District, Yellowstone County, denying his motion to transfer this case back to Youth Court.  We affirm.

¶3     M.J.V. raises three issues on appeal which we have restated as follows:

¶4     1.  Did the District Court abuse its discretion when it determined that M.J.V.'s case should remain in District Court rather than being transferred to Youth Court?

¶5     2.  Should this Court invoke plain error review of M.J.V.'s claim that § 41-5-206, MCA, violates due process because it does not specifically allocate to the State the burden of proving whether a youth's case should remain in district court?

¶6     3.  Does a transfer hearing implicate double jeopardy principles thereby prohibiting the State from proceeding with adjudication or prosecution following a transfer hearing?

## Factual and Procedural Background

¶7     On September 22, 2008, then 16-year-old M.J.V. was charged by Information with two felony counts of Burglary and one felony count of Arson.  The Affidavit and Motion

2

for Leave to File Information alleged that on the night of September 18, 2008, M.J.V., along with three other individuals, unlawfully entered and set fire to the Huntley Project High School in Worden, Montana. The school was completely destroyed by the fire. M.J.V., who has significant learning disabilities, subsequently entered a not guilty plea to all three counts.

¶8 On March 16 and 17, 2009, the parties appeared in the District Court for a hearing to determine whether the case should be transferred back to Youth Court. Evidence presented at the hearing indicated that M.J.V. was a special education student, and although he was in high school, he read at only a second-grade level. He was both cognitively delayed and learning disabled. Evidence also indicated that M.J.V. and his three accomplices entered the school several times to vandalize various offices, to steal items from the facility, and eventually, to set fire to the school.

¶9 At the conclusion of the transfer hearing, the Judge orally pronounced his decision that the case would remain in District Court. This decision was followed by a written order dated March 25, 2009. M.J.V. now appeals the District Court's decision.

¶10 Having reviewed the record, the District Court's decision and the parties' arguments on appeal, we have determined to decide this case pursuant to Section I, Paragraph 3(d)(v) of our 1996 Internal Operating Rules, as amended in 2006, which provides for memorandum opinions.

**Discussion**

¶11 As a preliminary matter, M.J.V. argues that his appeal of the court's denial of his motion to transfer is an appealable issue and not an interlocutory one because any

3

subsequent plea in District Court might waive any defects present in the transfer proceedings. The State, on the other hand, while not waiving the right to argue in future cases that transfer orders are interlocutory and, therefore, not appealable, concedes this issue on the facts of this case only and does not argue against appellate review of the denial of M.J.V.'s motion to transfer to Youth Court.

**Issue 1.**

¶12 *Did the District Court abuse its discretion when it determined that M.J.V.'s case should remain in District Court rather than being transferred to Youth Court?*

¶13 This Court reviews a district court's decision as to whether a juvenile should be prosecuted in youth court or in district court for an abuse of discretion. *State v. Whiteman*, 2004 MT 15, ¶ 10, 325 Mont. 358, 106 P.3d 543 (citing *State v. Spina*, 1999 MT 113, ¶ 12, 294 Mont. 367, 982 P.2d 421). In addition, we review the specific findings of fact relied on by the lower court in making this decision to determine whether those findings are clearly erroneous, and we review a lower court's conclusions of law to determine whether its conclusions are correct. *Whiteman*, ¶ 10.

¶14 Montana's Youth Court Act (Title 41, chapter 5, MCA) provides that when the youth charged is 16 years of age or older at the time of the conduct alleged to be unlawful and the unlawful act is arson or burglary, a district court may not transfer the case back to youth court unless it finds, by a preponderance of the evidence, that

> (a) a youth court proceeding and disposition will serve the interests of community protection;
> (b) the nature of the offense does not warrant prosecution in district court; and
> (c) it would be in the best interests of the youth if the matter was prosecuted in youth court.

4

Section 41-5-206(1)(b)(ii), (vii) and (3), MCA,

¶15    In the case *sub judice*, the District Court heard testimony from M.J.V.'s mother; several of M.J.V.'s teachers and guidance counselors; the Huntley Project High School principal; two psychologists; two youth probation officers; one of M.J.V.'s co-defendants; a fire investigator, and two sheriff's officers, before concluding that community safety, the nature of M.J.V.'s offenses, and M.J.V.'s best interests, all weighed against transferring this case back to Youth Court.

¶16    As to the first of the three requirements in § 41-5-206(3), MCA, community protection, because the options available through Youth Court could not provide the type of supervision that M.J.V. needed, transferring M.J.V. to Youth Court did not meet the requirement of community protection. Under Montana's statutory scheme, a youth cannot remain in a juvenile residential treatment facility after the youth turns 18. *See* § 41-5-103(45), MCA. M.J.V. was nearly 18 at the time of the transfer hearing. The evidence presented at the hearing from both adult and juvenile correctional professionals established that when a youth court has less than a year to work with a juvenile offender before that offender's 18th birthday, there are very limited options the youth court can provide. In M.J.V.'s case, assuming the court had transferred this case to Youth Court, that court would have had less than nine months to work with M.J.V. before he turned 18.[1]

---

[1]  In fact, M.J.V. has now turned 18. Even if we were to conclude that the District Court had abused its discretion in denying M.J.V.'s motion, transfer to Youth Court is no longer an option.

¶17 While no one advocated that M.J.V. be incarcerated, Dr. Robert Page, a clinical psychologist who had evaluated M.J.V. at the State's request, testified that M.J.V. needed immediate and structured intervention with clearly identified behavioral expectations and clear consequences if M.J.V. chose not to meet those expectations. The District Court determined that the options available in Youth Court could not provide that structure.

¶18 As to the second requirement in § 41-5-206(3), MCA, the nature of the offense, the District Court observed that this was not an allegation that M.J.V. set something small on fire causing minimal damage; rather, the Huntley Project High School was completely demolished as a result of M.J.V.'s and his accomplice's conduct. Moreover, the State pointed out that M.J.V.'s conduct was far beyond high school mischief. A community lost its high school as a result of M.J.V.'s actions, and those called upon to fight the fire risked their lives to do so.

¶19 The third and final requirement in § 41-5-206(3), MCA, requires a district court to consider whether it would be in the best interests of the youth if the matter was prosecuted in youth court. In this case, the District Court determined that M.J.V.'s best chance of living a productive, crime-free life lay within the programs available through the District Court. Dr. Page recommended a very structured setting for M.J.V. such as boot camp or the Intensive Supervision Program, neither of which were available to M.J.V. through Youth Court due to M.J.V.'s age.

¶20 It is manifest on the face of the briefs and the record before us that this appeal is without merit. The record clearly supports the District Court's conclusion that because of the serious nature of the offenses, a longer term and more structured environment than

what was available to M.J.V. through Youth Court would not only be in M.J.V.'s best interests, but would better serve the interests of community protection.

¶21   Accordingly, we hold that the District Court did not abuse its discretion in denying M.J.V.'s motion to transfer this case to Youth Court.

**Issue 2.**

¶22   *Should this Court invoke plain error review of M.J.V.'s claim that § 41-5-206, MCA, violates due process because it does not specifically allocate to the State the burden of proving whether a youth's case should remain in district court?*

¶23   M.J.V. contends that the District Court violated his right to due process when it placed the burden to prove the statutory factors in § 41-5-206, MCA, on M.J.V. rather than on the State. M.J.V. acknowledges that he failed to raise this issue before the District Court, but, citing *State v. Finley*, 276 Mont. 126, 915 P.2d 208 (1996), he asserts that plain error review is appropriate here because a failure to resolve this issue would result in a manifest miscarriage of justice or would compromise the integrity of the judicial process.

¶24   We decline to engage in a plain error review of M.J.V.'s due process claim because a mere assertion that this Court's failure to engage in plain error review may result in a manifest miscarriage of justice is not sufficient to implicate the plain error doctrine. *State v. Mackrill*, 2008 MT 297, ¶ 48, 345 Mont. 469, 191 P.3d 451; *see also State v. Rovin*, 2009 MT 16, ¶ 30, 349 Mont. 57, 201 P.3d 780 (wherein we also declined to exercise plain error review of a claimed error because the defendant's mere assertion that our failure to engage in plain error review may result in a manifest miscarriage of justice failed to satisfy M. R. App. P. 12(1)(f)).

7

**Issue 3.**

¶25    *Does a transfer hearing implicate double jeopardy principles thereby prohibiting the State from proceeding with adjudication or prosecution following a transfer hearing?*

¶26    M.J.V. asserts on appeal that because of the amount of evidence presented at the transfer hearing and the findings of the District Court following the hearing, the State is now precluded by double jeopardy from bringing any further proceedings against M.J.V. in the District Court.  Instead, M.J.V. argues that this case should be remanded to Youth Court for sentencing in accordance with the Youth Court Act.

¶27    The State argues that there is no merit to M.J.V.'s claim that a transfer hearing implicates double jeopardy principles, because a transfer hearing does not allow for adjudication of guilt.  Further, the State points out that M.J.V. did not object to any of the evidence presented at the transfer hearing.

¶28    "[I]t is a well-established maxim of law that 'acquiescence in error takes away the right of objecting to it.' " *State v. Jackson*, 2009 MT 427, ¶ 62, 354 Mont. 63, __ P.3d __ (quoting *State v. Malloy,* 2004 MT 377, ¶ 11, 325 Mont. 86, 103 P.3d 1064; § 1-3-207, MCA).  Accordingly, we decline to address this issue.

¶29    Affirmed.

/S/ JAMES C. NELSON

We concur:

/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ MICHAEL E WHEAT
/S/ JIM RICE