DA 12-0645

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 265

JAMES MARTIN LANGFORD,

        Petitioner and Appellant,

  v.

STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:     District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DV-12-610C
                    Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Carolyn Gill; Gill Law Office, PLLC; Kila, Montana

        For Appellee:

                Timothy C. Fox; Montana Attorney General; Pamela P. Collins; Assistant
                Attorney General; Helena, Montana

                Ed Corrigan, Flathead County Attorney; Travis R. Ahner; Deputy County
                Attorney; Kalispell, Montana

Submitted on Briefs:  June 12, 2013

Decided:  September 17, 2013

Filed:

_____
                         Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 James Martin Langford appeals from an order of the Eleventh Judicial District Court, Flathead County, denying his petition requesting relief from his duty to register as a sexual offender, filed pursuant to § 46-23-506(3)(b), MCA. We affirm.

¶2 The sole issue on appeal is whether the District Court abused its discretion in denying Langford's petition.

## BACKGROUND

¶3 Langford was convicted in 1992 of incest in violation of § 45-5-507, MCA (1991). He pleaded guilty to having sexual intercourse or sexual contact with his daughter, B.S., who was sixteen at the time of the offense. On August 28, 1992, Langford was sentenced to Montana State Prison for twenty years, with ten years suspended. The sentencing court, in addition to standard conditions for sexual offenders, required that Langford register as a sexual offender and complete a sexual offender treatment program at Montana State Prison. Langford was prohibited from having contact with the victim, B.S., unless approved by his probation officer. He was also prohibited from having contact with any children under the age of sixteen years. Langford could not reside or frequent places where children congregated and was prohibited from accessing child pornography. Langford was further subject to polygraph testing. At the time of Langford's conviction, level designation of a sexual offender was not required. Therefore, Langford did not receive a level designation by the sentencing court.

¶4 Many of the arguments Langford currently advances resound with those advanced at his sentencing hearing. The sentencing court observed that Langford argued he should

2

not be incarcerated because of the efforts he had made in developing alcohol treatment programs in the western part of Montana. The sentencing court noted that "[a]pparently the defendant has remained free of intoxicating substances, and has dedicated himself to helping others to recover from such addiction." In response to Langford's arguments, the sentencing court stated:

> While the defendant should be commended for his efforts in his recovery, as well as his efforts in helping others, this court is nonetheless mindful that one of the goals of sentencing is punishment. . . .
> In imposing the sentence specified below, this court is struck by the fact that the defendant has admitted hundreds of the instances of sexual abuse against his daughter. The fact that the defendant has disclosed the full history of his sexual abuse of his daughter is also commendable. However, this long history of sexual abuse, coupled with physical violence against the daughter, indicates to this court an extensive problem.

¶5 The psychosexual evaluator, Dr. Michael Scolatti, recommended that Langford could be treated in the community. The sentencing court rejected this recommendation, noting Scolatti's statement, in his report, that "Mr. Langford represents a sex offender whose crime is horrendous. There is no doubt that Mr. Langford has caused significant psychological harm to his victim and should be held accountable for his sexually abusive behavior."

¶6 On June 8, 2012, Langford filed his petition in the District Court requesting relief from his requirement to register as a sexual offender. The District Court conducted a hearing on August 31, 2012, and received evidence from Langford and the State.

¶7 Langford presented evidence that he was (as he states in his opening brief on appeal) "a model prisoner"; that he completed Phases I and II of sex-offender treatment; that he accumulated no infractions or violations of prison rules; and that he received all of

3

his good time credit. Following his release from prison in 1997, Langford completed a two-year aftercare sexual offender program; registered as a sexual offender for the past fifteen years; was regularly employed; and has been a member of the Fresh Life Church. Langford represented that the registration requirement negatively impacts his personal life and his business life. He presented testimony from Dr. Scolatti, who conducted a follow-up evaluation of Langford in 2012. Dr. Scolatti opined that Langford's treatment had been successful—though, upon questioning by the District Court, Dr. Scolatti admitted that he could not say that there is "no risk" Langford will reoffend. For these reasons, as well as others, Langford argued that the District Court should relieve him from his requirement to register as a sexual offender pursuant to § 46-23-506(3)(b), MCA.

¶8     B.S. was present by way of videoconference and expressed her opposition to Langford's petition. In addition, she submitted a letter, dated June 25, 2012, which the State filed in the District Court and the District Court referenced in its Order. B.S. opened her letter by stating her emphatic opinion that her father should be a lifetime sexual offender registrant. The letter went on to describe Langford's sexual abuse of her "hundreds to thousands of times," beginning when she was about three years old. When B.S. was very little, Langford threatened that her mother would leave them if B.S. told anyone what he was doing to her; when she was older, he told her he would kill her mother and brothers if she told anyone, and she believed that he would. B.S. described escalating violence as she grew older—Langford choked her, punched her, and placed pillows over her face so no one would hear her screams. "There were many times I

4

thought he was going to kill me, and many that I wished he had." B.S. states she continues to suffer from flashbacks, trust issues, and PTSD, and that she lives in fear of her father and people like him. "It seems like a small price for him to have to pay to have to register as a sex offender in comparison to what I will go through for the rest of my life."

¶9 The District Court determined, after "[c]onsidering the testimony of Dr. Michael Scolatti and most importantly the testimony of the victim, Petitioner has failed to establish the statutory requirements necessary to be relieved from the requirements of lifetime registration." The District Court specifically found, after considering all the circumstances, that "[c]ontinued registration is necessary for public protection and is in the best interests of society."

## STANDARDS OF REVIEW

¶10 A district court's interpretation and application of a statute and its conclusions of law are reviewed for correctness. *In re C.D.H.*, 2009 MT 8, ¶ 21, 349 Mont. 1, 201 P.3d 126. We have not previously discussed the standard for reviewing a district court's decision regarding a petition for relief from the duty to register as a sexual offender filed under § 46-23-506(3), MCA. As with designation of a sexual offender level, *see State v. Hill*, 2009 MT 134, ¶ 22, 350 Mont. 296, 207 P.3d 307, a district court must exercise considerable discretion in determining whether to grant or deny relief from registration. Accordingly, the standard of review is whether the district court abused its discretion in granting or denying the petition. This Court will not disturb a discretionary decision of a district court absent an abuse of that discretion. *State v. Burke*, 2005 MT 250, ¶ 11, 329

5

Mont. 1, 122 P.3d 427. A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *State v. Rovin*, 2009 MT 16, ¶ 23, 349 Mont. 57, 201 P.3d 780. Further, a district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *City of Missoula v. Girard*, 2013 MT 168, ¶ 10, 370 Mont. 443, 303 P.3d 1283.

## DISCUSSION

¶11 *Did the District Court abuse its discretion in denying Langford's petition?*

¶12 Langford argues on appeal that the District Court incorrectly interpreted the first prong of § 46-23-506(3)(b)(ii), MCA, to mean that no one can be relieved of the duty to register unless an evaluator can predict that there is no possible chance of reoffending. Such an interpretation, Langford argues, would render the statute meaningless and make it impossible for someone to ever obtain relief from registration. Langford also argues that the harm to the victim is addressed at sentencing and should not be the basis for determining the best interests of society. Further, the preferences of the victim do not equate, Langford maintains, to the best interests of society.

¶13 The State argues that the District Court properly exercised its discretion when it denied Langford's petition. Citing protection from recidivism as the primary purpose of the Sexual or Violent Offender Registration Act, the State maintains that the District Court was correct in finding that Langford continues to present a threat of reoffending and that protection of the public is necessary so long as that possibility exists.

¶14 Section 46-23-506, MCA, provides for several distinct duration periods for registration of sexual or violent offenders. The relevant provisions for sexual offenders are set forth as follows:

(1) A sexual offender required to register under this part shall register for the remainder of the offender's life, except as provided in subsection (3) or during a period of time during which the offender is in prison.

. . .

[(3)](b) Except as provided in subsection (5), at any time after 10 years of registration for a level 1 sexual offender and at any time after 25 years of registration for a level 2 sexual offender, an offender may petition the sentencing court or the district court for the judicial district in which the offender resides for an order relieving the offender of the duty to register. The petition must be served on the county attorney in the county where the petition is filed. Prior to a hearing on the petition, the county attorney shall mail a copy of the petition to the victim of the last offense for which the offender was convicted if the victim's address is reasonably available. The court shall consider any written or oral statements of the victim. The court may grant the petition upon finding that:
(i) the offender has remained a law-abiding citizen; and
(ii) continued registration is not necessary for public protection and that relief from registration is in the best interests of society.

. . .

(5) Subsection (3) does not apply to an offender who was convicted of:
(a) a violation of 45-5-503 [sexual intercourse without consent] if:
(i) the victim was compelled to submit by force, as defined in 45-5-501, against the victim or another; or
(ii) at the time the offense occurred, the victim was under 12 years of age;
(b) a violation of 45-5-507 if at the time the offense occurred the victim was under 12 years of age and the offender was 3 or more years older than the victim;
(c) a second or subsequent sexual offense that requires registration; or
(d) a sexual offense and was designated as a sexually violent predator under 46-23-509.

¶15 The statute presents a scheme whereby a sexual offender generally must register for the remainder of the offender's life. However, with certain exceptions, a sexual offender may petition for relief from registration. Thus, an offender designated a Level 1 offender may petition after 10 years of registration and a sexual offender designated a Level 2 may petition after 25 years of registration. The court must consider statements of the victim and "may" grant the petition upon finding that (1) the offender has remained law-abiding; (2) continued registration is not necessary for public protection; and (3) relief from registration is in the best interests of society.

¶16 Langford incorrectly asserts that the District Court misinterpreted the statute to mean that no one could be relieved of the duty to register unless an evaluator could predict there is no possibility of recidivism. The District Court determined that there was a low risk of Langford's reoffending based upon the testimony of Dr. Scolatti. The District Court also properly considered Langford's crime and B.S.'s statements. Considering that protection from recidivism by sexual offenders is the primary purpose of the Sexual or Violent Offender Registration Act, evidence that there is some risk of reoffending is a sufficient basis to deny relief from the duty to register. We conclude that the District Court correctly interpreted § 46-23-506(3), MCA. We must now consider whether the District Court abused its discretion in denying the relief requested.

¶17 The trial court is in the best position to judge the credibility and demeanor of witnesses and their testimony. *State v. Lally*, 2008 MT 452, ¶ 24, 348 Mont. 59, 199 P.3d 818; *State v. Gray*, 2001 MT 250, ¶ 25, 307 Mont. 124, 38 P.3d 775. Although finding

that Langford's registration requirements posed problems for him in his personal life and business life, the District Court also found that B.S.'s statement and request for continued registration were more compelling. The District Court considered the nature of abuse in the underlying offense and the years in which it had been perpetrated upon B.S. Consideration was given to Langford's progress, but the District Court ultimately determined that B.S., as a member of society, demonstrated that Langford still posed a threat to the public. This conclusion was supported by Dr. Scolatti's testimony, which established that Langford had a low risk of reoffending.

¶18 A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *Rovin*, ¶ 23. This Court will not disturb a discretionary decision of the District Court absent an abuse of discretion. *Burke*, ¶ 11. The sexual abuse perpetrated by Langford upon his daughter was horrific. B.S., in her letter to the court, articulated her fears and concerns regarding Langford's petition in a well-reasoned and logical manner. The District Court was required to consider her statements, and it ultimately decided that Langford remained a threat to public safety. In doing so, the District Court demonstrated that it employed conscientious judgment and did not exceed the bounds of reason. We see no injustice in the District Court's denial of Langford's petition. We agree with the State that the District Court exercised its discretion properly.

¶19 Finally, we note that Langford has admitted to years of sexual abuse beginning when B.S. was eight years old. B.S. indicates that the abuse began when she was much younger and that Langford threatened to kill her mother and brothers if she told about the

9

abuse. Although Langford only pleaded to one incident of incest under the Information filed in 1991, occurring when B.S. was sixteen years of age, B.S. testified that this was because the State, at that time, believed a specific date of sexual abuse, rather than a continuing course of abuse beginning when she was younger, was necessary. We note that under the registration statute, had the 1991 Information accurately represented the same conduct as Langford has admitted in the psychosexual evaluation, Langford would have been required to register for life, with no ability to petition for relief, because B.S. was under the age of twelve, § 46-23-506(5)(b), MCA, and because B.S. was compelled to submit to force based upon threats to kill her mother and brothers, § 46-23-506(5)(a)(i), MCA. This issue, however, was not raised in the trial court and is thus not currently before us. We also observe that Langford's repeated petitions to the District Court (three), and B.S.'s plea that she be spared the continual trauma of addressing her abuse on any subsequent petitions by requiring Langford to register for life, is also not before us. We nevertheless note these considerations regarding the legislative scheme, Langford's admissions, and B.S.'s plea in order to further enlighten Langford that his petition is not well-founded and the District Court exercised proper discretion in denying his petition.

¶20    Affirmed.

/S/ LAURIE McKINNON

10

We Concur:


/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS